STATEMENT.
With a view to a refunding of the bonded and other indebtedness of the City of Coral Gables, Dade County, Florida, the following statute was enacted and approved May 8, 1931:
"Chapter 15132 (No. 494)
"AN ACT to Authorize the refunding of the Bonded and other Indebtedness of the City of Coral Gables; Authorizing the Commission of Said City to Enter into Agreements with the Holders of Its Outstanding Bonds and/or Other Obligations; Providing for the Appointment of a Special Depositary for the Proceeds of Taxes, Special Assessments or Other Revenues or Assets Pledged for the Payment of such bonds and/or Other Obligations, and Prescribing the Powers and Duties of Such Depositary; Authorizing the Appointment of a Comptroller of Bond Revenues and Funds in the Event of Default on the Part of Said City in the Performance of Obligations Incurred Hereunder, and Providing for the Validation of Bonds Issued Under the Provisions of this Act and Providing for a Referendum Election Upon the Issuance of Such Bonds.
"Be It Enacted by the Legislature of the State of Florida:
"Section 1. The City of Coral Gables is hereby authorized to issue refunding bonds in the manner herein provided for the purpose of refunding its outstanding bonded and other indebtedness and the interest thereon, now due and payable or hereafter maturing, at or after the maturity of such bonds or other obligations, or the interest thereof, or prior to the maturity thereof, pursuant to an agreement made with the holders of such bonds or interest coupons.
"Section 2. Such Refunding Bonds may be of one or both of the following classes: Class A, to consist of bonds constituting definite obligations of the City maturing not *Page 328 
more than fifty years from their date and bearing interest at a rate not to exceed six per cent, payable semi-annually and Class B, to consist of obligations which may be designated as Corporate Stock, without fixed maturities and bearing interest at a rate not to exceed seven per cent, the principal and interest of which shall be payable, out of the funds realized from the earnings and/or the sale of assets and/or other revenues which may be pledged therefor, upon such contingencies as may be stipulated in said bonds or in the proceedings authorizing their issuance. All bonds issued under this Act shall constitute negotiable instruments.
"Section 3. The Commission of the City of Coral Gables is hereby empowered to enter into agreements with holder or holders of any outstanding bond or bonds, coupon or coupons, or other obligations heretofore issued or now owing by said City regardless of whether such bonds or coupons or other obligations are then due and payable, providing for the refunding of the indebtedness represented by such bonds, and/or coupons and/or other obligations. Such agreement may provide for the exchange of refunding bonds of Class A, and/or Class B, in payment and satisfaction of said outstanding bonds and/or coupons, and/or other obligations upon such terms and conditions as may be agreed upon.
"Section 4. An agreement for the refunding of the outstanding indebtedness of the City, pursuant to the provisions of this Act, may provide for any or all of the following:
"(a) For the issuance, in retirement of said outstanding bonds and/or coupons and/or other obligations of Class A, Refunding Bonds and Class B, Refunding Bonds in such proportions as may be agreed upon; *Page 329 
"(b) For the levy of ad valorem taxes upon all taxable property in the City, without limitation of rate or amount for the payment of the principal and interest of Class A Refunding Bonds.
"(c) For the pledging for the payment of the Class B Refunding Bonds, or any portion or series thereof, of delinquent taxes, tax certificates and/or special improvement liens owned by the City, property owned by the City, and the income derived therefrom, and any public utilities owned by the City and/or the income derived therefrom, and to charge the assets so pledged with a lien in favor of the holders of such Class B Refunding Bonds;
"(d) For the levy of a tax of a fixed millage annually until all of the Class A and/or Class B bonds, together with the interest thereon, shall have been paid, at all events, or upon such contingencies as may be agreed upon between the holders of said bonds and the Commission of the City of Coral Gables;
"(e) For the fixing of a definite ratio between the amount of taxes levied for current expenses and the amount of taxes levied for the payment of the principal and interest of bonds issued under the provisions of this Act, and for the maintenance of such ratio until all of the bonds issued under the provisions of this Act and the interest thereon shall have been paid in full;
"(f) For a Depositary or Trustee to receive, hold and administer all revenues, properties or other assets pledged for the payment of Class B Bonds and for the payment of the fees and compensation of such Depositary or Trustee as a current expense of the City;
"(g) For the disposal by the Depositary of the assets pledged for the payment of the Class B Bonds from time to time upon such terms and conditions as shall be prescribed *Page 330 
by the holders of such bonds or by their duly constituted agents or attorneys;
"(h) For the foreclosure of the liens for taxes and assessments and for the pledging of properties acquired by the City as a result of such foreclosures for the further securing of bonds issued hereunder;
"(i) For the acceptance by the Commission of the City of Coral Gables in payment of such delinquent taxes or special assessments as may be specified in the agreement, of Class B Bonds upon such terms and conditions as may be defined in the agreement;
"(j) For such other undertakings and covenants on the part of the City of Coral Gables not inconsistent with the Constitution of the State of Florida and this Act, it being intended to confer upon the City of Coral Gables complete power and authority to enter into such arrangements with it creditors as may be necessary or expedient for the purpose of refunding its outstanding bonded indebtedness and other obligations and the interest thereon, and this Act shall be liberally construed to effectuate that intent.
"Section 5. The Depositary or Trustee, appointed to receive, hold and administer revenues, properties or assets pledged for the payment of the Class B Bonds, shall be a bank or trust company within or without the State of Florida authorized to undertake trusts. Such Depositary may also be constituted, by agreement with the holders of bonds issued under the provisions of this Act, custodian of all taxes and/or revenues applicable to the payment or retirement of the principal and interest of the Class A Bonds. All moneys required to be paid to such Depositary under the provisions of any agreement made pursuant to this statute shall, as the same are collected from day to day, be paid directly by the collecting official of the City of Coral Gables *Page 331 
to said Depositary, and the Depositary shall give such security therefor as may be stipulated in said agreement. Such Depositary shall be the custodian of all sinking funds accumulated for the payment or retirement of the principal and interest of bonds issued under the provisions of this Act. Funds in the hands of the Depositary, unless otherwise provided by an agreement made under the provisions of this Act, shall be invested in obligations of the United States.
"Section 6. — In the event of a default, on the part of the City of Coral Gables, in the payment of any bond or interest coupon issued under the authority of this Act, on the date of its maturity, and such default shall continue for a period of sixty days, or in the event of a default, on the part of said City, in the performance of any covenant or undertaking prescribed by an agreement made with its creditors under the provisions of this Act, and such default shall continue for a period of sixty days, a court of competent jurisdiction, upon the application of any holder of a bond or interest coupon issued under the provisions of this Act, either of Class A or Class B or upon application of the Depositary appointed in pursuance of an agreement made hereunder, may appoint a Comptroller of Bond Revenues and Funds, who shall have the powers of a Receiver in Chancery. Said Comptroller shall be a resident of the State of Florida or some corporation organized under the laws of Florida and authorized by such laws to act as receiver and shall be entitled to take possession of all assets pledged by the City for payment of any such bonds and to collect all revenues allotted to payment or retirement of such bonds. Such appointment by such court shall not be made except upon sixty days notice of such application for such appointment having been given to the Commission of *Page 332 
said City. The Revenues collected by the Comptroller shall be applied in the manner specified in any agreement made with the creditors of said City under the provisions of this Act. The Comptroller may be directed to foreclose, in the manner provided by law, the lien of taxes and assessments upon all delinquent properties. Such suits to foreclose the liens of taxes or assessments may be brought by the Comptroller under any statute, general or special, applicable to said City, and shall be conducted as, and governed by the provisions of said Act or Acts, and the decrees, deeds and other acts therein shall have the same presumptions in their favor as though such suits have been conducted by the City. When all costs, overdue interest and bonds which are then due and payable have been paid, and any other default on the part of the City shall have been terminated, the Comptroller shall be discharged. A Comptroller so appointed by any court shall exercise no political or governmental powers conferred by law upon the Commission of said City, but shall constitute the agent of such court for the purpose of enforcing its judgments and decrees and for the protection of the rights of the creditors of the City.
"Section 7. No bonds shall be issued under the provisions of this Act until a proposition for the issuance thereof shall have been approved by a majority of the votes cast in an election by the qualified electors who are freeholders of the City of Coral Gables, in which election a majority of the freeholders who are qualified electors, residing in such city, shall participate. Such proposition may be submitted at a general election or at a special election called for the purpose. Notice of such special election, or the submission of such proposition at a general election shall be given by publication in a newspaper of general circulation published in the City of Coral Gables, or if there *Page 333 
be none, then in a newspaper published in the City of Miami once a week for three successive weeks; the first of such publications to be not less than twenty-one (21) days prior to the date of election. Such notice of election shall set forth the date of election, the hours the polls will be open and the place or places of election; and shall contain a complete copy of the ordinance authorizing the issuance of the bonds. If such proposition shall be submitted at a general election, the polling places shall be those designated for such general election. In the event the proposition be submitted at a special election, the Commission of the City of Coral Gables shall fix such place or places for the holding of the election as it shall deem expedient. The election shall be held and conducted, and returns made and canvassed in the manner provided by law for the conduct and canvass of elections upon bond propositions. All provisions of the City Charter, except such as may be inconsistent herewith, shall apply to and govern such elections.
"Section 8. Both Class A and Class B Bonds, issued under the provisions of this Act, may be validated by decree of the Circuit Court of Dade County in a proceeding brought under the provisions of Sections 5106 to 5129, inclusive, of the Compiled General Laws of Florida, 1927.
"Section 9. In the event any clause or Section of this Act shall be held invalid, the validity of the remainder of the Act shall not be affected, and this statute shall in that event be construed and applied with such clause or section deleted.
"Section 10. All laws or parts of laws in conflict with this Act are hereby repealed.
"Section 11. This Act shall take effect immediately upon its approval by the Governor or upon its becoming a law without such approval. *Page 334 
"Approved May 8, 1931."
On February 27, 1933, a petition was filed under Sections 5106 (3296), et seq., Compiled General Laws, in the Circuit Court for Dade County, in which the City of Coral Gables is petitioner and the State of Florida is respondent, the object being the validation of refunding bonds to be issued by the municipality.
In the petition it is in effect alleged that the City of Coral Gables "is governed by and acting under a charter granted by" Chapter 13972, Special Acts of Florida, 1929 regular session, as amended by Chapters 13970, 13976, 13977 and 13978, Acts of 1929; that pursuant to "Chapter 15132," Acts of 1931, "the Commission of the City of Coral Gables, at a meeting duly and regularly held on the 7th day of March, A.D. 1932, duly adopted Ordinance No. 174, and on the 17th day of March, A.D. 1932, duly and regularly passed and adopted Ordinance No. 178, amendatory to the terms and provisions of Ordinance No. 174; and on the 15th day of June, A.D. 1932, duly and regularly passed and adopted Ordinance No. 185, being likewise amendatory to the terms and provisions of Ordinance No. 174, and by the terms of said ordinances, and according to the tenor thereof, authorized the issuance of refunding bonds in a sum not to exceed Four Million Dollars ($4,000,000.00), and "corporate stock" of the said city in an amount equal to the difference between $4,000,000.00 and the total amount of bonded and floating indebtedness, and accrued interest thereon, upon the date of refunding; the said refunding bonds and the said corporate stock being issued for the purpose of paying and refunding the outstanding bonded and floating indebtedness of the City of Coral Gables; * * * that under and by virtue of the provisions of said Ordinance No. 174 and the said Ordinances Nos. 178 and 185, *Page 335 
amendatory thereto and thereof, an election was duly and regularly held on April 12, 1932, and that the results of such election were in favor of the issuance of said refunding bonds and corporate stock, as your petitioner is prepared to show and prove upon the hearing hereof; * * * that the bonds shall be signed by the mayor under the official seal of said city, attested by the city clerk, and the interest coupons thereto attached shall be executed with the facsimile signatures of said officials"; (a form of the bond and of the corporate stock is given) "that under and by virtue of the terms of said Resolution No. 1234 of said City of Coral Gables, a certified copy of which is hereto attached and made a part hereof, as if specifically set forth herein, and marked Exhibit D, the Chase National Bank of the City of New York, in the City of New York, State of New York, has been and is designated by the Commission of the City of Coral Gables as the place for payment of principal and interest on said refunding bonds.
"Your petitioner further says, with reference to the corporate stock, that under and by virtue of the terms of Ordinance No. 174, and the amendments thereto, the place for deposit of funds in connection therewith cannot at this time be named, but that such place shall be a bank or trust company, acceptable to the Bondholders' Protective Committee and the Commission of the City of Coral Gables, and that same will, at the proper time be done; * * * that under and by virtue of the terms of said Chapter 15132, Laws of Florida, 1931, and the several ordinances and resolutions enacted and adopted, according to the terms thereof, it is neither possible, expedient nor proper at this time to further identify the bonds and corporate stock; * * * that said refunding bonds bear interest at the rate of six per centum per annum, payable semi-annually as evidenced by *Page 336 
coupons attached thereto and mature forty years from their date with the option vested in the city, to be exercised upon the happening of certain conditions more fully set forth in said bonds and ordinances, to redeem said bonds upon any interest-payment date on or after twenty years from the date of such bonds; * * * that said Corporate Stock bears interest at the rate of six per centum per annum, payable upon the retirement of such corporate stock, which has no definite maturity but which is required to be retired in the manner and from time to time as more fully appears from the terms thereof, and the ordinances authorizing its issuance; * * * that on February 1, 1933, the outstanding total indebtedness of the City of Coral Gables was in the principal sum of $8,117,000.00 and that the accrued and unpaid interest thereon as of said date was in the sum of $1,125,638.31, making a total of $9,242,638.31 and that the outstanding total floating indebtedness of the City of Coral Gables is in the principal sum of $396,834.52, and that the accrued and unpaid interest thereon as of the said date is in the sum of $50,309.72, making a total floating indebtedness of principal and interest in the sum of $447,144.24, and making the total of bonded and floating indebtedness, together with interest thereon as of February 1, 1933, in the sum of $9,689,782.55. A schedule showing the total amount of bonded indebtedness, the total amount of floating indebtedness and interest due on each of these items, respectively as of February 1, 1933, is heretofore attached, marked Exhibit E, and prayed to be made a part hereof as if specifically set forth herein; * * * that by Resolution No. 1234, copy of which is hereto attached and described as Exhibit D, and prayed to be taken and made a part hereof as if specifically set forth herein, the City Attorney of the City of Coral Gables was authorized and instructed by the City Commission *Page 337 
of said city to institute these proceedings, looking towards the validation of the bonds and corporate stock referred to and described herein; * * * that all necessary and proper things as required by said Chapter 15132, Laws of Florida, 1931, and Sections 5106 to 5129, inclusive, of the Compiled General Laws of Florida, 1927, have been regularly done and complied with, all of which your petitioner stands ready and able to prove at the hearing to be held by this Honorable Court in connection herewith.
"WHEREFORE, your petitioner prays that your Honors issue an order against the State of Florida, requiring it, through the State Attorney for the Eleventh Judicial Circuit of Florida, to show cause within such time and at such place within said Circuit to be designated in said order, such time to be not less than twenty and not more than thirty (30) days after the issuance of such order, why the said $4,000,000.00 Refunding Bonds and Corporate Stock, the amount of which shall be the difference between $4,000,000.00 and the total amount of bonded and floating indebtedness and accrued interest thereon, upon date of refunding, should not both be validated and confirmed.
"And your petitioner further prays that upon the final hearing of this cause, an order of this Honorable Court may be entered, validating and confirming said bonds and corporate stock to be issued as hereinabove set forth."
The State Attorney filed an amended answer:
"That he, as said State Attorney for said Circuit and State, has investigated the law and proceedings referred to and set forth in the petition filed herein and that he believes the allegations set forth in said petition should be litigated.
"He admits the petitioner is a municipal corporation of the State of Florida, located in Dade County, and governed *Page 338 
by and acting under Chapter 13972, Laws of Florida, 1929, as amended.
"He admits that Chapter 15132 of the Laws of Florida, 1931, purports to authorize the issuance of bonds and corporate stock of the petitioner of said City for the purpose of refunding the outstanding bonds and floating indebtedness of the petitioner.
"He denies that Ordinances numbered 174, 178 and 185, constituting Exhibits A, B and C, annexed to the petition, were duly adopted and demands strict proof of the same.
"He denies that an election was duly and regularly held on April 12, 1932, resulting in the approval of the issuance of the Refunding Bonds and Corporate Stock pursuant to the provisions of Ordinances numbered 174, 178 and 185, as alleged in said petition and demands strict proof thereof.
"He admits that the form of Refunding Bonds set forth in said petition is a true copy of the form of Refunding Bonds prescribed by Ordinance No. 175.
"He admits that the form of Corporate Stock set forth in said petition is a true copy of the form of corporate stock prescribed by Ordinance No. 174, as amended by Ordinance No. 178.
"He denies that Resolution No. 1234, and constituting Exhibit D annexed to said petition, was duly passed by the Commission of the City of Coral Gables and demands strict proof thereof.
"He denies that the place for the deposits of funds applicable to the payment of the Corporate Stock cannot now be designated and that it is not possible, expedient or proper to further prescribe the form and details of the Refunding Bonds and Corporate Stock and demands that the petitioner be required to show to the satisfaction of this Court wherein these things and details cannot now be done. *Page 339 
"He admits that the Refunding Bonds described in said petition are to bear interest at the rate of six per centum per annum, payable semiannually, as evidenced by coupons attached thereto and are to mature forty years from their date, subject to prior redemption, upon any interest payment date on or after twenty years from the date of such bonds, at the option of the City, upon the happening of the conditions more fully set forth in said bonds and ordinances, pursuant to which it is intended they be issued.
"He admits that the Corporate Stock described in said Petition are to bear interest at the rate of six per centum, payable upon the retirement of such Corporate Stock, which has no definite maturity but which is required to be retired in the manner and from time to time, as more fully appears from the terms thereof and the ordinance pursuant to which it is intended they be issued.
"He denies that on February 1, 1933, the City of Coral Gables had outstanding bonded indebtedness and floating indebtedness in the amounts alleged in said petition, and that on said date there was due upon said bonded indebtedness and floating indebtedness the respective amounts of interest alleged in said petition and that the detailed statement of such indebtedness, constituting Exhibit E annexed to said petition, is a true statement, and demands that petitioner submit strict proof thereof.
"He admits that Resolution No. 1234, constituting Exhibit D annexed to said petition, directs the City Attorney to institute these validation proceedings.
"And further answering he makes known unto the Court that certain property now in the corporate limits of the City of Coral Gables lying west of Red Road, sometimes known as the West Dixie Highway, was by Chapter 12631 of the Special Acts of the Florida Legislature for the year *Page 340 
1927, annexed to said City, said property being more particularly described as follows: (description given); "that said property, as will appear, was so annexed to the said City of Coral Gables, after the issuance of the original bonds set forth and identified in the petition herein, and such property received no benefits, either directly or indirectly, from the issuance, sale or proceeds from the sale of such bonds; that said annexed property is not liable for the payment of such bonded indebtedness or for such Refunding Bonds the validation of which is sought in said petition; that if said Refunding Bonds are validated the full faith and credit of the entire City of Coral Gables will be pledged, which said City includes the said property so annexed. Therefore, your Respondent respectfully prays the Court in the event said Refunding Bonds are so validated, to in its decree save and except the said annexed property from liability of such Refunding Bonds.
"He denies that all necessary and proper things, as required by Chapter 15132, Laws of 1931, and Sections 5106 to 5129 of the Compiled General Laws of Florida, 1927, have been regularly done and complied with and demands strict proof of the same and prays the Court take proof of all matters and things set forth in said petition before said bonds shall be judicially validated and that the Court may consider all matters of law relating thereto; and further answering says that the State of Florida, by him as its State Attorney, submits its interest in this validation proceeding and prays adjudication thereof by this Court.
"And further answering he makes known unto the Court that certain property now in the corporate limits of the City of Coral Gables lying in Township 55 South, Range 41 East, was illegally annexed to said City, and that said property contains no municipal improvements and has not *Page 341 
been improved in any manner whatsoever by the City and contains no streets and has no water, sewerage, or other municipal improvements, and is not policed, and that over 90% thereof is waste land, uncultivated, unimproved, and unproductive, and the City has no authority and never has had to levy and collect taxes upon said property, and therefore your respondent respectfully prays the Court, in the event said Refunding Bonds are so validated, to in its decree save and except the lands in Township 55 South, Range 41 East, from liability of such Refunding Bonds.
"He denies that under and by virtue of the provisions of said Ordinance No. 174, and said Ordinances Nos. 178 and 185, and inventory thereto and thereof, an election thereof was duly and regularly held on April 12, 1932, and that the issues of such election were in favor of the issuance of said Refunding Bonds and Corporate Stock, as the Petitioner is prepared to show and prove upon hearing thereof, but says that neither registration, election nor tally of the resolution thereof was legal and in accordance with the laws of the State and Ordinances of the City of Coral Gables.
"Further answering, he says that the bonds herein sought to be validated should not be validated, because for the payment of the said bonded indebtedness, the full faith and credit of the entire City of Coral Gables is pledged, including certain annexed territory; that the validity of said annexation is now being litigated in a certain quo warranto proceeding now pending in the Circuit Court of Dade County, Florida, Case No. 15050, and that the Rule to Show Cause therein has not yet been answered by the City of Coral Gables, which quo warranto proceedings is made a part hereof by reference, and it is prayed that the Court consider the subject matter of the same herein." *Page 342 
Ordinance No. 174 contains the following:
"SECTION 1. For the purpose of settling and refunding the outstanding bonded and floating indebtedness of the City of Coral Gables, together with the interest accrued and accruing thereon, there shall be issued Refunding Bonds and Corporate Stock of the City of Coral Gables, under the authority of Chapter 15132 of the Laws of Florida, 1931, in an aggregate amount of not exceeding the amount of said bonded and floating indebtedness, together with the interest accrued thereon to the date of payment or refunding; provided, however, that the amount of such Refunding Bonds shall not exceed FOUR MILLION DOLLARS ($4,000,000.00). The Corporate Stock shall be issued in an amount equal to the difference between Four Million Dollars ($4,000,000.00) and the total amount of bonded and floating indebtedness and accrued interest thereon upon the date of refunding.
"SECTION 2. Said FOUR MILLION DOLLARS ($4,000,000.00) of bonds shall be entitled 'Refunding Bonds.' They shall bear such date as shall hereafter be fixed by resolution of the City Commission and shall mature forty years from such date, and shall bear interest at the rate of six (6) per centum per annum, payable semiannually. The numbers, denominations and place of payment of the principal and interest of such bonds shall be fixed by resolution of the City Commission. Said bonds shall be redeemable at the option of the City of Coral Gables, at 105% of their par value plus accrued interest to date of redemption, upon any interest payment date on and after twenty years from their date, provided the entire amount of Corporate Stock issued hereunder shall have previously been retired, or shall be called for redemption at par and accrued interest at the same time. Said bonds shall be signed by the Mayor and *Page 343 
attested by the City Clerk, and shall have the corporate seal of said City affixed, and shall have coupons for interest attached, said coupons being executed with the facsimile signatures of said Mayor and said City Clerk, and said bonds and coupons shall be issued in substantially the following form, to-wit: (form of bond and coupon given).
"SECTION 7. The Corporate Stock, the issuance of which is provided for by Section 1 of this ordinance, shall be payable solely out of the Corporate Stock Trust Fund, hereinafter provided for. Said Corporate Stock shall bear the same date as that borne by the Refunding Bonds, and shall bear interest until paid, without compounding, at the rate of six (6) per centum per annum. The numbers, denominations and place of payment of the Corporate Stock Certificates shall be fixed by resolution of the City Commission. Said Corporate Stock shall have no definite maturity of principal or interest, and shall be redeemable at any time by the City at par and accrued interest, upon thirty (30) days' notice in a financial newspaper published in the City of New York. Said Corporate Stock shall be signed by the Mayor and attested by the City Clerk, and shall have the corporate seal of said City affixed, and shall be in substantially the following form, to-wit: (form of Corporate Stock given). * * *
"SECTION 8. There is hereby established a special fund to be known as "The Corporate Stock Trust Fund," the Depositary of which shall be a bank or trust company acceptable to the Committee and the Commission. There shall be paid into said Fund the following described monies and the properties below described shall be pledged to it:
"(a) All collections of taxes and/or special assessments delinquent in said City at the date of issuance of Corporate *Page 344 
Stock hereinbefore mentioned; subject to the limitations mentioned in paragraph (d) of this section.
"(b) All funds received by the City under agreements made prior to July 17, 1931, in settlement of taxes levied for the year 1930-1931 and prior thereto. Pending the receipt of cash in pursuance of such settlement, the contracts or instruments representing the claim of the City thereunto shall be assigned to the Depositary for the account of the Corporate Stock Trust Fund.
"(c) The proceeds of all special assessments heretofore levied and now or hereafter delinquent, subject to the limitations mentioned in said paragraph (d). Said special assessments shall be pledged to said depositary by written instrument satisfactory to the depositary.
"(d) All tax certificates owned by said City on the date of issuance of Corporate Stock herein mentioned; and such tax certificates or delinquent taxes or portions thereof hereafter owned by said City as may represent taxes levied for debt service on said bonds or available to said Corporate Stock Trust Fund under the terms hereof; such tax certificates shall be delivered to said depositary.
"In the third, fourth and fifth years after the issuance of obligations hereunder the proceeds of taxes, tax sale certificates and special assessments mentioned in Paragraphs (a), (c) and (d) hereof shall be paid into the Interest and Sinking Fund created by Section 5 of this ordinance until the interest due in that year shall have been provided for; thereafter in each such year all such funds shall be paid into the Corporate Stock Trust Fund.
"(e) All public utilities and other properties now owned by the City, not actually used for strictly governmental purposes and all properties acquired by the foreclosure of tax and or assessment liens pledged hereunder, *Page 345 
shall be pledged to said Corporate Stock Trust Fund by written instruments approved by said Depositary; and the net income derived from each of said properties shall be paid into said Corporate Stock Trust Fund at the end of each fiscal year.
"(f) The Venetian Pool, the Coliseum, the Golf Course and the Country Club shall be pledged to said Corporate Stock Trust Fund by written instruments approved by the Depositary. The aggregate net income derived from such properties shall be paid into said Corporate Stock Trust Fund at the end of each fiscal year. Separate accounts, in form satisfactory to the Depositary, shall be kept of the revenues and expenditures of each of such properties.
"(g) All surpluses in the 'Interest and Sinking Fund,' created for the payment of the Refunding Bonds authorized to be issued by this ordinance, over the amount required for the current annual interest and sinking fund payment, and/or to supply any deficits in the prior payments into said Sinking Fund, shall be paid into the Corporate Stock Fund at the end of each fiscal year.
"Title to all property pledged to the Corporate Stock Trust Fund shall remain in the City subject to the lien for the benefit of the holders of the Corporate Stock. Such property and assets shall remain public property, to be liquidated and applied solely for the purpose of retiring the Corporate Stock, and neither the Depositary nor the Committee, nor the holders of the Corporate Stock shall have any title to, or interest in, such property, other than the rights conferred by this ordinance, to insure the application of such property to the purpose for which they are or shall be pledged.
"The Depositary shall have the right in its discretion, with the approval of the Committee, to use any funds in *Page 346 
the Corporate Stock Trust Fund to satisfy State, Special District and County taxes due on the properties pledged to said Fund, whenever it shall be necessary to conserve such assets or be advantageous to said Trust Fund.
"SECTION 9. The proceeds of the sale of any property, or asset, pledged to the Corporate Stock Trust Fund, shall be paid into said Fund, provided, however, that the City shall have the right to dispose of any property or asset of a public utility, provided the funds realized by the sale of such property or asset shall be applied to the purchase of property or assets rendering a similar service.
The Depositary shall liquidate all tax certificates, special improvement liens and other properties in its possession or pledged to the Corporate Stock Trust Fund, other than the property of public utilities, at such times and upon such terms as shall be approved by the City Commission and the Committee. In the event that the said City Commission and the Committee shall be unable to agree, the decision of the Depositary shall be final. All cash in the hands of the Depositary pledged for the payment of obligations authorized by this ordinance, until paid out or invested in the manner prescribed by this ordinance, shall be secured by an equivalent par value amount of bonds or other obligations of the United States of America.
"SECTION 10. At least thirty days prior to the issuance of any bonds or corporate stock under the provisions of this ordinance, the City Manager shall furnish the Depositary of the Corporate Stock Trust Fund, a statement of all of the properties, monies, or assets payable, or pledged, to the Corporate Stock Trust Fund, and at or prior to the delivery of any Refunding Bonds or Corporate Stock authorized by this ordinance, such assets or properties or monies shall be delivered to the Depositary, or in case such *Page 347 
properties are not capable of manual delivery, proper instruments in writing, pledging such properties to the Corporate Stock Trust Fund, shall be delivered to the Depositary in form satisfactory to it. Within thirty (30) days after the close of each fiscal year, the City Manager shall furnish to the Depositary a statement in writing of all funds, tax certificates, special improvement liens or other properties which accrued to the Corporate Stock Trust Fund during the preceding fiscal year. The Depositary shall have access, at all times during business hours, to the public books and records of the City for the purpose of verifying statements furnished to it by the City Manager and/or for the purpose of protecting the Trust Fund in its custody.
This appeal is from a decree validating municipal bonds.
Chapter 15132, Acts of 1931, was enacted "to authorize the refunding of the bonded and other indebtedness of the City of Coral Gables." Section 6 of Article IX of the Constitution as amended in 1930, provides that "municipalities of this State shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such * * * municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to refunding bonds issued exclusively for the purpose of refunding the bonds or the interest thereon of such * * * municipalities." Chapter 15132 authorizes the refunding of the bonded and other indebtedness of the City of Coral Gables. Bonds to refund "bonds or the interest thereon," may be issued by the city without an election when so duly authorized by statute. But bonds to refund "other indebtedness" of the city, not included in "bonds or the *Page 348 
interest thereon," can legally be issued only after they have been approved by the required vote of the freeholder electors residing in the city, as stated in amended Section 6, Article IX of the Constitution. Chapter 15132 required the bonds to be issued under its provisions to be approved "by a majority of the votes cast in an election by the qualified electors who are freeholders of the City of Coral Gables, in which election a majority of the freeholders who are qualified electors, residing in such city shall participate."
It appears that an election was held April 12, 1932, and
"1. That 401 freeholder voters were qualified to vote at said election.
"2. That a total number of 354 ballots were cast.
"3. That on the question of adoption of proposal as follows: 'Shall the indebtedness of the City of Coral Gables be settled and refunded by the issuance of Refunding Bonds in the amount of Four Million Dollars ($4,000,000.00) and corporate stock to represent the balance of said existing indebtedness pursuant to Ordinance No. 174 * * *,' 329 votes were cast FOR the proposal; 23 votes were cast AGAINST the proposal."
The record thus shows that an election was held as required by the Act, and that the issue of all the bonds or corporate stock authorized by the Act was approved as required by law; therefore there is organic and statutory authority for issuing all the bonds and corporate stock if no illegality in the statute or proceedings be shown which may render the bonds or the corporate stock or any of them unlawful.
Chapter 15132 does not purport to require holders of bonds of the City to accept refunding bonds or corporate stock in exchange for outstanding bonds or coupons, and no *Page 349 
such bondholder is a party to this suit so as to bind present bondholders by any decree rendered in this cause.
The statute authorizes the city authorities to enter into refunding agreements with holders of bonds of the city and to issue refunding bonds and corporate stock in exchange for bonds or coupons or other evidences of indebtedness outstanding against the city that may by agreement be refunded as authorized by the statute.
Holders of bonds and coupons or other indebtedness of the City have their legal rights unaffected by the statute. No provision of the statute can affect the rights of creditors of the city without their consent, consequently the statute does not impair the obligation of any contract with its creditors. If paragraphs (c) and (g) of Section 4 of Chapter 15132 are otherwise valid, they cannot legally be made to so operate as to impair the obligation of the city's contract with its bondholders or other creditors.
Bonds in excess of $4,000,000.00 and corporate stock in excess of the balance of the city's total indebtedness cannot be issued. The refunding bonds and the corporate stock that may legally be issued can be used as authorized by the statute for refunding the bonded and other debts of the city as may be agreed by the city and its creditors within the provisions and limitations of the statute.
Bonds and other debts of the city not so refunded by agreement, maintain their statu quo, so there can be no impairment of contract rights in violation of organic law.
The constitution and the statute required the approving election to be by the proper electors residing in the city. Whether any territory is illegally embraced within the city limits cannot be determined in this proceeding.
The statute and the approving election held thereunder authorize the issue of the Class B bonds or corporate stock *Page 350 
and the use of them by agreement as evidences of outstanding indebtedness of the city; and such Class B bonds or corporate stock appear to be of such a nature and for such a purpose as to authorize proceedings under the statute for their validation. If Class A bonds required an approving vote of the freeholder qualified electors, that has been obtained. No invalidity in the statute or in the proceedings thereunder affecting the issue of the bonds and corporate stock referred to in the statute has been made to appear by the contentions made on behalf of the State; and minor irregularities, if any, in the proceedings are not material on the record as made. Future action taken under the statute will be subject to judicial review in due course of law.
Validating decree affirmed.
DAVIS, C. J., and BROWN and BUFORD, J. J., concur.