STATE, *et al.,* v. COUNTY OF CITRUS, *et al.*

157 So. 4.
Opinion Filed September 27, 1934.

*Hampton, Bull & Crom, Lofick P. Williams* and *M. C. Scofield,* for Appellants;

*Erskine W. Landis, Hull, Landis, & Whitehair, C. H. Lockhart* and *Ernest C. Johnson,* for Appellee.

DAVIS, C. J.—On May 7, 1934, the Board of County Commissioners of Citrus County, pursuant to Chapter 15772, Laws of Florida, Acts of 1931, by resolution, and without any vote of the freeholders or other approval of the electors of the county, duly provided for the issuance of $1,511,000.00 refunding bonds, to refund outstanding bonds in the same amount. The bonds proposed to be refunded had all been validated by decree of the Circuit Court. The refunding bonds, as so authorized, have been judicially validated by a decree of the Circuit Court in a special bond validation proceeding instituted under Sections 5106-5112 C. G. L.,

3296-3302 R. G. S. This is an appeal from the Circuit Court's final decree of validation.

. The purpose of the statutory bond validation proceedings provided for by Section 5106-5112 C. G. L., 3296-3302 R. G. S., is to set up a special course of legal procedure in the nature of a proceeding *in rem* as to proposed bonds, for the purpose of having their validity investigated in the courts of this State in advance of issuance.

· The object of the proceedings is to have finally adjudicated by the court in advance of their issuance whether or not proposed obligations projected in the form of bonds or transferable evidences of a funded debt have been validly authorized and may be legally issued in the form, and containing the recitals, covenants, undertakings, pledges or limitations stipulated, described or set up in the authorizing ordinance or resolution providing for same, as approved or adopted by the representatives of the county or other corporate, or quasi corporate, obligor, and to judicially determine the legal sufficiency of the proceedings constituting the initiatory steps for the issuance and sale of the particular obligations sought therein to be validated. Spencer v. City of Clarkesville, 129 Ga. 627, 59 S. E. Rep. 274. The questions of law and fact to be decided in such statutory bond validation proceedings extend to whether or not the proposed warrants, certificates or bonds, and the obligations and contractual relationship attempted to be created thereby, directly or indircetly, principally or collaterally, are within the authority of law, so that whatever is decided by the court with reference thereto, shall never again be subject to be called in question in any court in this state. State *ex rel*. Diver v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; Lippitt v. City of Albany, 131 Ga. 629, 63 S. E. Rep. 33. Section 5109 C. G. L., 3299 R. G. S.

It appears by the resolution of the County Commissioners that in authorizing the particular refunding bonds here brought in controversy, said County Commissioners provided among other things as follows:

(1) That the refunding bonds to be issued should contain on their face a specific pledge in the following form: "for the prompt payment of this bond and the interest thereon as the same becomes due, the full faith, credit *and all the resources of said Citrus County are hereby irrevocably pledged."*

(2) That all revenues and income of the county *derived from sources other than ad valorem taxes,* now authorized by law for the payment of interest and principal of indebtedness created for highway purposes and/or any revenues and income of the county now or hereafter derived from sources other than *ad valorem* taxes, and not otherwise decided by law, shall be and were thereby to be pledged to the payment of the Road and Bridge Refunding bonds therein authorized, and that such income and revenues were thereby pledged, and as and when such funds should be allocated or made available, they should be converted into the interest and sinking fund account for the payment of said Road and Bridge Refunding Bonds and were to be thereby appropriated to pay the interest and retire said Road and Bridge Refunding Bonds and should be used for no other purpose. Section 10, Resolution adopted by County Commissioners May 7, 1934.

(3) That all covenants, representations, agreements and undertakings in said resolution set out, as well as those appearing on the face of each of said Road and Bridge Refunding Bonds, should constitute a contract with the bondholders to be enforceable by suit, action or mandamus on behalf of any bondholder in any court of competent juris-

diction, whether or not a monetary default shall then prevail in the payment of the principal or interest of such Road and Bridge Refunding bonds.

(4) That if any clause, section, paragraph or provision of said resolution or of the Road and Bridge Refunding Bonds so authorized should be declared unenforceable by any court of final jurisdiction, it should not affect or invalidate any remainder thereof,. and if any of the said Road and Bridge Refunding Bonds should be adjudged illegal or unenforceable in whole or in part, the holders should become entitled to the position of holders of a like amount of the indebtedness provided to be refunded, and to enforce their claim for payment.

Section 6 of Article IX of the State Constitution, as amended in 1930, reads as follows:

"Section 6. The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts, or municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such counties, districts, or municipalities."

The amended constitutional provision as above quoted has heretofore been before this Court for consideration in the following cases: Sullivan v. City of Tampa, 101 Fla. 298, 134 Sou. Rep. 211; Ginsberg v. City of Daytona Beach, 103 Fla. 168, 137 Sou. Rep. 253; City of Jacksonville v. Ren-

froe, 102 Fla. 512, 136 Sou. Rep. 254; State v. City of Miami, 103 Fla. 54, 137 Sou. Rep. 261; Nolle v. Brevard County, 100 Fla. 1692, 131 Sou. Rep. 776; State v. City of Miami, 100 Fla. 1388, 131 Sou. Rep. 143; State v. Special Tax School District No. 5, Dade County, 107 Fla. 93, 144 Sou. Rep. 356; Stewart v. New Smyrna-Coronado Beach Special Road & Bridge District, 101 Fla. 823, 132 Sou. Rep. 636; Savage v. Board of Public Inst. Hillsborough County, 101 Fla. 1362, 133 Sou. Rep. 341; Sholtz v. McCord, 112 Fla. 248, 150 Sou. Rep. 234; Herbert v. Thursby, 112 Fla. 826, 151 Sou. Rep. 385; State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; City of Daytona Beach v. State, 101 Fla. 560, 132 Sou. Rep. 490; Masters v. Duval County, 114 Fla. 205, 154 Sou. Rep. 172; State v. City of Coral Gables, 114 Fla. 326, 154 Sou. Rep. 234; State *ex rel.* Pinellas County v. Sholtz, 115 Fla. 561, 155 Sou. Rep. 736; State v. Ocean Shore Imp. District, 116 Fla. 284, 156 Sou. Rep. 433; County of Bay v. State, 116 Fla. 656, 157 Sou. Rep. 1; State v. City of Miami, 116 Fla. 517, 157 Sou. Rep. 13.

But in none of the cases just cited was it determined whether or not refunding bonds can be validly issued under Chapter 15772, Acts 1931, without the approving vote of freeholders contemplated by Amended Section 6 of Article IX of the Constitution, where the proposed refunding bonds purport to enlarge upon the obligation of the original bonds by *irrevocably* pledging as a means of their payment additional source of revenue as well as renewing and continuing the obligation of the bonds that are proposed to be refunded.

The obligation of a contract, whether a bond or otherwise, is defined as the law or duty which binds the parties to perform their agreement. It is coeval with the undertak-

ing to perform and consists of the means which, at the time of the creation of the contract, the law afforded for its enforcement, or, as it has been otherwise stated, in the effective force of the law which applies to and compels performance of the contract, or a compensatory equivalent in the way of damages for nonperformance. It consists in what an obligor *has undertaken to perform* as measured by the standard of the laws in force at the time it was entered into, as expressed in the terms of the contract interpreted or construed according to their settled legal meaning, and embraces within its purview whatever is undertaken to be done as a legal, as distinguished from a moral, duty to perform the terms and conditions of what has been agreed upon between the parties. Sturges v. Crowinshield, 4 Wheat. 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat, 214, 6 L. Ed. 606; National Surety Co. v. Architectural Decorating Co., 226 U. S. 276, 33 Sup. Ct. Rep. 17, 57 L. Ed. 221; Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Cook v. Gray, 2 Houst. (Del.) 455, 81 Am. Dec. 185; Smith v. Mead, 3 Conn. 253, 8 Am. Dec. 183; State *ex rel.* Ranger v. City of New Orleans, 102 U. S. 203, 26 L. Ed. 132.

The amendment to Section 6 of Article IX of the Constitution of Florida, approved in 1930, was designed as a specific limitation upon the pre-existing power of the Legislature to authorize the creation of any new or additional obligations upon the part of counties, districts or municipalities. The limitation expressed is absolute. And in the cases hereinbefore cited, it has been applied to every form of proposed contractual device intended as a future obligation of the taxing power, directly or indirectly undertaken regardless of form, in those instances where the question has arisen in the courts since the ratification of the amendment at the general election in 1930.

What then is the meaning of the proviso that the restrictions of this 1930 constitutional amendment shall not apply to "the refunding of bonds" etc.?

The language adopted is expressive of nothing more than the clearly implied, if not expressly stated, idea that since the *obligation of contract* of those earlier outstanding "bonds" cannot consistently with the Constitution of the United States (Section 10, Article I, U. S. Const.) be defeated by any default or neglect of the obligors in failing to provide payment when due, nor circumvented by the will of the electors in refusing to vote to authorize the making of new obligations to discharge what is already owed, if the latter course be found necessary, that in that event refunding bonds continuing the contractual obligation of the old bonds might be authorized by the Legislature, without regard to any consenting vote of the freeholders, such as would otherwise be required by the very terms of the amendment if this exception had not been incorporated therein.

. Thus construed, it will be seen that while a particular class of bonds described as refunding bonds may be authorized by the Legislature to be issued without any vote of the freeholder electorate consenting thereto, the only authority left in the Legislature to provide for the issuance of such refunding bonds without a vote of the freeholders, is that power which is limited to a mere authorized extension of the old obligation of contract to the new bonds, when the latter purport to be issued "exclusively" as refunding bonds to be used for the purpose of refunding the old bonds or the interest thereon.

. Otherwise expressed, it may be stated that the plan intended to be carried out by the proviso to amended Section 6 of Article IX of the Constitution with reference to that class of bonds usually described as ordinary refunding bonds, is

to leave resident in the Legislature all of its pre-existing legislative power to issue bonds to be designated as refunding bonds, which, when authorized by the Legislature, issued and negotiated to take up earlier outstanding bonds or the interest thereon, will by force of the refunding statute and of the Constitution itself, merely subrogate the holders of such authorized refunding bonds to all the outstanding legal rights and remedies of the holders of the bonds refunded, and not attempt to enlarge the original obligation of the contract by imposing a greater liability than would be enforceable by legal means with reference to the original bonds, unless by consent of the freeholder electorate to the creation of such enlarged obligation, as provided in Section 5, Article IX of the Constitution, as amended.

Chapter 15772, Acts of 1931, is a legislative Act adopted by the Legislature in 1931 to carry out the purpose and intent of amended Section 6 of Article IX of the Constitution as ratified but a few months before this general refunding Act of 1931 was enacted. It is in effect a legislative interpretation of the amended provision of the Constitution relating to the issuance of refunding bonds by counties, districts and municipalities, and appears to have been carefully and skillfully drawn to accord with the Legislative powers in the premises as now defined in the Constitution.

In 1931 General Refunding Act in terms recognizes the obvious limitation that has now been placed on the power of the Legislature to provide for the issuance of refunding bonds without a precedent vote of freeholders should such refunding bonds carry a broader base of liability than the bonds that are to be refunded. And so Chapter 15772, in Section 24 thereof, expressly makes mention of the procedure that must be followed with respect to the authori-

zation of refunding bonds that are more comprehensive in obligation than ordinary refunding bonds issued exclusively for the purpose of renewing and extending into the refunding bonds the obligation theretofore prevailing in the bonds refunded.

In Sullivan v. City of Tampa, 101 Fla. 298, 134 Sou. Rep. 211 (217), this court said that the object of amended Section 6 of Article IX was to prevent further abuse of the power to issue *new and additional* obligations, while at the same time facilitating the *refunding* of obligations already outstanding that were not to be repudiated. "Refunding" was therein defined as a replacement of one obligation with another, including the selling of new securities for the purpose of redeeming those outstanding. Rates of interest and the price to be paid for refunding bonds being subjects not undertaken to be specifically dealt with in the amended Constitution, it was held that a mere increase in the interest rate of refunding bonds over the rate specified in the bonds refunded, was not an objectionable enlargement of obligation in violation of the intent of the constitutional amendment and was therefore not invalid.

In Nolle v. Broward County, 100 Fla. 1692, 131 Sou. Rep. 776, it was held that the obligation of district bonds could not be enlarged into a pure county obligation through the process of refunding the district bonds with county refunding bonds issued pursuant to a statute so providing, unless the enlargement of obligation from a district to a county obligation should first be approved by a majority of the votes cast in an election held according to the terms of amended Section 6 of Article IX of the State Constitution.

In State v. City of Miami, 100 Fla. 1388, 131 Sou. Rep. 143, it was held that a bond issue for refunding purposes without an election was valid, where the refunding bonds

merely extended the time for payment of the original indebtedness. This decision was followed by another case—State v. City of Miami (1931), 103 Fla. 54, 137 Sou. Rep. 261, wherein it was held that where two or more municipalities had been combined so as to result in a single municipality embracing persons and properties of the several, so as to make the combined municipality own the same property and owe the same debts, that Section 6 of Article IX of the Constitution as amended does not require a vote of the freeholders to issue refunding bonds of the consolidated municipality designed to extend the time for the payment of the original indebtedness, no new debt having been created and the identical obligation of the old being merely extended and continued. This holding was suplementary to the decision in another Miami refunding bond case—State v. City of Miami (1931), 101 Fla. 292, 134 Sou. Rep. 608, decided earlier in the same year, wherein the same general rule was approved.

In City of Daytona Beach, v. State (1931), 101 Fla. 560, 132 Sou. Rep. 490, it was held that under amended Section 6 of Article IX of the Constitution an Act abolishing three prior municipalities that had already incurred debts in their own individual corporate capacities, chargeable against their individual pre-existing taxing powers as set up in their individual charters prior to their being abolished, and thereupon setting up a new municipality under a new name, into which the territory of the three abolished municipalities should be incorporated, could not constitutionally authorize refunding bonds to be issued covering an indebtednes of one of the three abolished municipalities, when issued by the new municipality as its own corporate obligation, because of the prohibition against such an enlargement of obligation

without a vote of the freeholders, even in the form of refunding bonds.

In State v. Special Tax School District No. 5, Dade County, 107 Fla. 93, 144 Sou. Rep. 356, it was held that the amendment to Section 6 of Article IX was a self executing grant of power to counties, districts and municipalities to issue refunding bonds strictly limited to the purposes prescribed in the amendment without the necessity of an election, although the exercise of the power thus granted was subject to being regulated and controlled by the Legislature which could neither entirely deny, nor unduly hamper or restrict such intent of the constitutional provision. It was again pointed out in this case that questions of interest rate, price and dates of maturities of refunding bonds are matters for legislative determination, and that a legislative determination as to them will not be interfered with by a judicial undertaking to conjure up implied limitations nowhere expressed as to interest rates, maturities or prices for which the constitutionally authorized refunding bonds may be sold when ordained and fixed by an Act of the Legislature designed to give effect to the amendment by setting up appropriate procedure and incidental regulations to govern the proposal, issuance, sale, and negotiation of refunding bonds.

In State v. City of Coral Gables, 114 Fla. 326, 154 Sou. Rep. 234, this Court was called on to consider certain refunding bonds that had been authorized by a special Act of the Legislature. The Act contemplated an enlargement of some of the original obligations in the process of refunding thus provided for, and consequently provided for the ratification of the proposed refunding bonds by an election called, held and carried in accordance with amended Section 5 of Article IX of the Constitution. The bonds

were sustained in that case solely because of the favorable vote that had resulted when the election was ordered, and the proposition there proposed duly voted on, by a majority of the freeholders of the municipality obligor issuing such refunding bonds.

In the case of State v. Ocean Shore Improvement District, 116 Fla. 284, 156 Sou. Rep. 433, the resolution for the bonds provided for a pledge of all income and revenues of the Ocean Shore Improvement District derived from any and all sources other than *ad valorem* taxes appropriated by law for the payment of interest and principal of indebtedness for highway purposes, and all revenue and income of said district then or thereafter derived from sources other than *ad valorem* taxes, and not otherwise specifically appropriated by law for other purposes, when and as such revenues were allocated and made available to the district, and that such revenue would be converted and placed in the interest and sinking fund account in that event. ·The refunding bonds embracing such pledge were validated by the Circuit Court and the Circuit Court's decree was affirmed by this Court.

In that case no question was raised by this Court, or by any of the parties, as to the validity of such specific pledge on the part of the Ocean Shore Improvement District being incorporated in the refunding resolution, nor would it likely have been of any avail to an objector had such point been asserted. As set up at the time the resolution authorizing the refunding bonds was adopted by it, the Ocean Shore Improvement District constituted little more than a quasi-corporated instrumentality for the ascertainment and collection of taxes to pay the accrued cost of the road improvements made in the district, and thereby to discharge its outstanding bonds issued in consideration thereof. Consequently the pledge of all *district* revenues, whether real-

ized from *ad valorem* taxation in the district or otherwise, presently enjoyed or anticipated for the future, as a means of discharging the district's bonded debt, was no enlargement of the district's obligation on its original bonds, because the district had been created and the continued existence of such district had been preserved by statute for no other purpose than to comply with the district's contractual obligation as contemplated by the bonds that were refunded through the issuance of the refunding bonds approved in the case of State v. Ocean Shore Improvement District, *supra*. The certificates of indebtedness refunded in that case were in contemplation of law bonds.

In the most recent case decided by this Court, State of Florida v. City of Miami, 116 Fla. 517, 157 Sou. Rep. 13, this Court had under consideration the validity of an issue of municipal refunding bonds that had been validated by the Circuit Court in a statutory validation proceeding similar to this one. One of the propositions presented on the appeal in that case was the validity *vel non* of a pledge inserted in the bonds, and provided for in the resolution authorizing them, to the effect that any proceeds the City of Miami might receive from the sale of any property, public utility or other asset, for the acquisition of which the outstanding bonds to be refunded had been issued, should be paid into the sinking fund for the refunding bonds, provided the proceeds should not be invested by the City of Miami in substituted property of the same nature to be used for the same purpose.* The bonds in that case were refunded under Chapter 15686, Special Acts 1931, Laws of Florida, and

---

*The resolution on this point reads as follows: "SECTION 14. If and when the City shall sell or otherwise dispose of any property, public utility or other asset for the acquisition or improvement of which any of the oustanding bonds to be refunded hereunder were issued, the consideration received by the City for such property, public utility or other asset will be paid into the sinking

embraced the entire outstanding general indebtedness of the City of Miami aggregating $29,891,000.00.

The pledge above referred to was upheld by us as valid, on the theory that there was no attempt to pledge any specific property of the city, thereby adding to the obligation already outstanding, nor was there any obligation presently created to compel the city to sell any of its assets and apply the proceeds to payment. All that was pledged was that if the city should abandon the public use of any of its properties and should sell them without an intent to acquire with the proceeds other properties in substitution thereof for public purposes, that then, and in that event, the proceeds so realized should be paid into the sinking fund account to apply on its debts. Thus limited, the pledge was merely a special contractual means of accomplishing an application that would have been ultimately capable of realization through legal process anyway under the rule recently laid down by this Court in City of Sanford v. Dofnos Corporation, 115 Fla. 795, 156 Sou. Rep. 142.

So there was no effort in State v. City of Miami, *supra,* to enlarge on the contractual obligation of the original bonds by creating in the proposed refunding bonds any additional or enhanced obligation not contemplated as being initially within the purview of the contractual obligation brought into being when the bonds proposed to be refunded were first issued on the city's behalf.

The foregoing review of the principal cases decided by

fund for the Refunding Bonds and used solely for the retirement of such Refunding Bonds in the manner herein provided; provided, however, that it shall not be necessary for the City to so apply the consideration received by it for such property, publict utility or other asset in the event such consideration is applied by the City to the purchase of substituted property of the same nature and to be used for the same purpose.

this Court with reference to refunding bonds issued without a vote of the freeholders, and subsequently considered here in judicial proceedings instituted to determine their validity, has been made in an endeavor to point out that in no case heretofore decided by this court since the constitutional amendment of 1930 with reference to issuance of county, district or municipal bonds was ratified, has an attempted enlargement of contractual obligation by means of refunding bonds been sustained as valid, where there was no approving vote of the freeholders as is required for the creation of new or additional obligations in the form of bonded indebtedness, whether called refunding bonds or described as some other kind of bond.

In City of Clearwater v. State *ex rel.* United Mutual Life Ins. Co., 108 Fla. 623, 147 Sou. Rep. 459, this Court said concerning the nature of the obligation of bonds issued with a special provision for the levy of stipulated taxes to provide for their payment, that *the fund contracted to be raised by the stipulated taxes* is the foundation upon which the bonds themselves rest and that the bond itself was to be regarded as but the present funding of the necessary future taxes contracted to be levied in order to pay such bond off in due course, as to the specified principal and interest. It was further said in that case that bonds could not be issued for purposes for which taxes cannot be levied and that bonds when issued are merely in anticipation of the taxes agreed to be provided and pledged to pay them before they are issued.

The bonds proposed to be refunded by the refunding bonds sought to be validated in this case, as we judicially know from the terms of the state statutes under which such bonds have been issued and are outstanding, are ordinary tax anticipation bonds issued for purposes for which *ad valorem* taxes for road and bridge purposes could be levied.

When issued such original bonds were issued solely in consideration of a pledge of its *ad valorem* taxing power promised and provided to be exercised by the County of Citrus in order to pay the principal and interest of such bonds when due. Such then was the sole obligation of the county's contract as embraced in the original bonds proposed to be refunded and such must be the limit of the county's contractual obligation in any bonds issued to refund them absent the approving vote of the freeholder electorate of Citrus County acquiescing in an extension of that obligation to include an "irrevocable" pledge of "all the resources" of said Citrus County, Florida.

We hold, therefore, that where an original issue of *county* road and bridge bonds proposed to be refunded, involved no contractual pledge of more than a specified exercise of the county's *ad valorem* taxing power provided to be exercised according to the statutes under which such original bonds were issued in order to pay them, that an attempted irrevocable pledge by the county of all the resources of the obligor county, specifically including revenue and income of the county other than *ad valorem* taxes, is an unjustified extension of the obligation of contract that cannot be constitutionally made effective in refunding bonds issued without the approving vote of a majority of the freeholders who are qualified electors residing in the county by which such proposed bonds are to be issued as refunding bonds to refund earlier bonds wherein no such specific contractual obligation is contained. Section 6, Article IX, State Constitution, as amended 1930.*

---

*From this statement it is not to be implied that the mere appropriation or use of county revenues for the purpose of paying county indebtedness, when authorized by the Legislature, is unlawful, the payment of such revenues not being contractually obligated, or attempted to be obligated for that purpose.

The obligation of the bonds of a county issued for a county purpose consists in what the county has by its bond contract undertaken to perform as measured by the standard of the laws in force at the time the bonds were issued, as expressed in the terms of the bonds themselves, interpreted or construed according to their settled legal meaning.

Where county bonds have been negotiated with no undertaking to pledge any special revenues, income or properties of the county other than the proceeds of ordinary *ad valorem* taxes agreed to be levied pursuant to the statutes under which the bonds were issued as county bonds, the obligation of refunding bonds issued to refund such county bonds without an approving vote of the county's electors who are freeholders, cast in the manner provided for in amended Section 6 of Article IX of the Constitution of Florida, must be limited to the renewal of the original obligation as expressed in the bonds refunded. And any attempt to add to, enhance, enlarge or increase such obligation by means of a pledge of special revenues, properties or income not theretofore obligated or pledged in the original bonds, will be held to be in violation of amended Section 6 of Article IX of the State Constitution, unless the issuance of the refunding bonds is ratified by the vote of a majority of the freeholders in the manner required by that section, even though the bonds so providing are characterized or denominated as "refunding" bonds, and as so characterized have been issued exclusively for the purpose of refunding or redeeming the prior bonds.

Where bonds are issued providing not only for their payment of special taxes arranged to be levied for the discharge of the obligation of same according to the terms of the statute under which such bonds are issued, but pledging in addition thereto the "full faith and credit" of the obligor,

the effect of such pledge of "full faith and credit" is not
to create a general or special lien or charge upon the unspec-
ified revenues, moneys or income of the obligor not therein
specifically obligated to the payment of such bonds, but is
to acknowledge an indebtedness for the amount of money
received as a consideration for the bonds, which indebted-
ness will become enforceable in an ordinary action, should
the special contractual obligation as embraced in the bond
itself, fail. City of Louisiana v. Wood, 102 U. S. 294, 26
L. Ed. 153; Geer v. School District No. 11 in Auray County,
111 Fed. 682; Brown v. City of Atchison, 39 Kan. 37, 17
Pac. Rep. 465. In addition, the pledge of the obligor's
"full faith and credit" is in legal effect an express under-
taking by the obligor that being obligated in good faith on
its bond it will use its resources as may be authorized or re-
quired by law for the prompt payment of the principal and
interest or the bond as it becomes due and payable under
its terms. State ex rel. Babson v. City of Sebring, 115 Fla.
176, 155 Sou. Rep. 669; State ex rel. Root v. Crandon, 115
Fla. 153, 155 Sou. Rep. 667.

The secondary proposition argued by appellants to the ef-
fect the court below erred in validating the refunding bonds
because of evidence adduced tending to show that the county
is insolvent and embarrassed, and that its credit will be im-
paired by the issuance of refunding bonds under the factual
circumstances appearing of record in this case, has been
considered by us on this appeal, with the result that the
ruling by the Chancellor on that proposition in favor of
the validation of the bonds is affirmed. Nor have we found
any other ground of invalidity shown by the record other
than that hereinbefore discussed and pointed out in this
opinion.

It follows that the decree appealed from should be re-

versed and the cause remanded to the Circuit Court with directions to enter its decree validating the issue of refunding bonds herein brought in controversy when and after appropriate amendments have been made in the proceedings for issuance and validation of said bonds to conform to the holding of this opinion. It is adjudged accordingly.

. ON MOTION FOR MODIFICATION OF FOREGOING OPINION

This cause having been submitted to the Court upon motion of counsel for a modification of the opinion filed here at the present term of the Court and same having been duly considered, it is ordered by the Court that the last line of the opinion filed in the said cause be changed so as to read as follows:

"This Court having found that the validation proceedings are legally insufficient to warrant a decree of validation of the present record, but that the illegal portions thereof pointed out in the opinion of the Court may be eliminated and a decree of validation entered in conformity to the opinion of this Court after the proceedings for the issuance and validation of the bonds in controversy have been so amended as to conform to the opinion of this Court, it is considered, ordered and adjudged that the decree appealed from be reversed and that the cause be remanded to the Circuit Court with directions to said Circuit Court to permit the filing in the Circuit Court of an amended and supplemental petition on the part of Citrus County, Florida, embodying and setting up any resolutions that may be hereafter adopted by the Board of County Commissioners of the county aforesaid, modifying the resolutions under which the proposed refunding bonds are to be issued by eliminating from the bonds and the proceedings had for their issuance, the pledges and provisions held invalid by this Court

in its opinion filed herein, to the end that the Circuit Court upon the filing of such amended and supplemental petition to conform to the opinion of this Court, may proceed with said validation proceedings to a judgment or decree in conformity with the holding of this Court on this appeal."

It is further ordered by the Court that judgment be entered in this cause in accordance with the foregoing amendment.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.