STATE, *ex rel.* ROGER W. BABSON v. CITY OF SEBRING.

155 So. 669.
Opinion Filed June 5, 1934.

*M. R. McDonald,* for Relator;

*W. H. Nollman, Fairfax T. Haskins, E. Noble Calhoun, John W. Watson, Jr., Abe Aronowitz, Gordon C. Huie, Fleming & Snow, J. M. Austin, M. H. Jones, Ernest P. Roberts, James T. Vocelle, Fred M. Harris, Carver & Langs-*

ton, *Nat J. Patterson, William M. Madison, Austin Miller, Gov Hutchinson, Emmet Safay, Giles & Gurney, W. F. Way, Archie Clement, Leitner & Leitner* and *G. R. Notting-ham,* for Respondent.

WHITFIELD, P. J.—Formerly the respondent municipality was established as the Town of Sebring. Under Chapter 14371 it is now designated City of Sebring.

The relator seeks by mandamus to require the payment of $500.00 from the municipal utility light and water funds of the city, upon the bonds of the municipality held by realtor, the defense in effect being that under the statutes authorizing the bonds to be issued and under the statutes of the State as they now exist, the bonds are to be paid only from the proceeds of tax levies in the absence of other controlling provisions of law.

There is in the record no sample copy of the bonds here involved, but the alternative writ alleges in substance that the Town of Sebring in October, 1924, and in September, 1925, executed, sold and delivered stated numbers of $1,000.00 bonds, "each of which was therein designated 'Light and Water Bonds,' * * * and in and by each of said bonds said municipality, among other things, pledged itself as follows:

"For the prompt payment hereof, both principal and interest as the same become due and payable, the full faith, credit and resources of the City of Sebring are hereby irrevocably pledged.

"This bond is one of a series of like date, tenor and amount, and is issued pursuant to the charter of said City, being Chapter 7242 of the Laws of Florida of 1915 and pursuant to a majority vote of the qualified electors of said City, who are freeholders therein, voting at an election duly and regularly called and held for that purpose on the 29th

day of July, 1924, and pursuant to ordinances of said City duly adopted for the purpose of improving and extending the Electric Light and Water System in the said City of Sebring.

"That all acts, conditions and things required to be done precedent to and in the issuance of this bond by the laws and Constitution of this State and the ordinances of said City have been done and have happened in due time, form and manner, and that the total indebtedness of said City including said bonds, did not exceed any constitutional or statutory limitation."

The alternative writ alleges:

"That each and all of said bond issues, above described, said 'Light and Water Bonds,' were issued for the sole purpose of raising funds to apply on, extend and improve the electric light and water system belonging to said municipality; that said municipality owned and operated its electric light and water system, and as a corporate function, before and at the time of issuing each and all of said issues of bonds and also still, owns and operates the same for profit, selling electrical current and water to various persons, firms and corporations within and without the corporate limits of this City, and therefore, Relator alleges that said electric light and water system so belonging to and operated by said municipality at the time of said bond issues and also at this time, constituted some of the *'credit and resources'* of said municipality and of which proceeds or funds derived from the sale of electrical current and water were pledged towards the payment of the principal and interest of each and all of said Light and Water Bonds as the same severally becomes due and payable, and in addition to a right of said Relator to a tax levy for his special benefit."

By motion to quash the alternative writ, the respondents

in effect challenge the legal correctness of the contentions of the relator. It is contended that the provisions contained in the bonds that "the full faith, credit and resources of the City of Sebring are hereby irrevocably pledged". for the prompt payment of the principal and interest of the bonds as they become due and payable, and that the allegations that the bonds "were issued for the sole purpose of raising funds to apply on, extend and improve the electric light and water system belonging to said municipality," considered with the statutory powers of the municipality, give to relator a right to require the payment on the bonds and coupons he holds of the sum of $500.00 from funds held by the municipality derived from the sale of electrical current and water belonging to the municipality.

In ascertaining the obligation of municipal bonds, the statutes authorizing their issue must be considered and given due effect even if in doing so the terms of the bonds are restrained or modified, since the authorizing statutes control the obligations of the bonds if the terms of the bonds are not in accord with the intendments of the governing statutes. State, *ex rel.* v. Crandon, decided May 29, 1934.

At the time the bonds were issued the statutory charter of the municipality contained the following:

"The Town Council shall have * * * special power to borrow money by bonding the town for any of the following purposes:

"1st. To improve streets and sidewalks.
"2nd. To establish waterworks and fire protection.
"3rd. To establish a gas or electric light system.
"4th. To establish a sewerage system.
"5th. To purchase or erect a Town Market building.
"6th. To purchase or erect a Town School.
"7th. To establish a street railway system.

"8th.   To provide a park or parks and improve the same.
"9th.   To purchase or erect a Town Hall."   Sec. 4, p. 1245, Special Acts of 1915.

See also Sec. 5, Art. VII, Chap. 11158, Acts of 1925.

"A special tax may be levied sufficient to create a sinking fund for the purpose of paying the Town's bonded indebtedness and interest thereon."   Sec. 2, Chap. 7704, Acts of 1917.   See Sec. 4, Art. VIII, Chap. 11158, Acts of 1925.

When the municipality has a bonded indebtedness the above quoted authority to levy a sufficient tax to pay the bonded indebtedness may be regarded as mandatory and not merely permissive.   See Little River Bk. & Tr. Co. v. Johnson, as Mayor, et al., 105 Fla. 212, 141 So. 141.

It is clear that the following provision of each bond as alleged in the alternative writ that "this bond is one of a series * * * issued pursuant to * * * Chapter 7242 of the Laws of Florida of 1915 * * * for the purpose of improving and extending the electric light and water system" of said municipality, and the designation "Light and Water Bonds" upon each bond as alleged, do not constitute a lien upon any property owned by the municipality whether in its governmental or corporate and proprietary capacity, even though the statutes authorize the municipality to acquire, hold, lease, sell or otherwise dispose of real and personal property within or without the city limits for municipal purposes to the same extent as natural persons may do, as under Section 6, Article 1, Chapter 7242, Acts of 1915, or even though the municipality is authorized "to issue and sell bonds upon its property both within and without its corporate limits." See Sec. 6, Art. I, Chap. 11158, Acts of 1925.

If the municipality may have statutory authority to impress a contract lien upon its municipal or corporate or proprietary property, the alternative writ does not allege

facts to show that such a lien has been given or attempted to be given to secure the payment of bonds, even if such a showing would authorize mandamus proceedings to enforce the payment of municipal bonds.

The statute authorized the municipality "to borrow money by bonding the town for" stated purposes including the establishment of a gas or electric light system and water works and fire protection, and authorized a special tax levy sufficient to pay the town's bonded indebtedness. Such statutory provisions contemplate that, unless otherwise provided by appropriate action duly taken under statutory authority, bonds issued for authorized municipal purposes shall be paid from funds derived from the authorized special tax levy to pay the bonded indebtedness of the municipality. No lien upon any municipal property arises by the issue of municipal bonds even though municipal property is to be acquired or improved by the proceeds of the bonds, unless such lien is expressly provided for under competent statutory authority. Then the remedy is not mandamus. See State v. City of Miami, 113 Fla. 280, 152 So. 6; State, *ex rel.* Montgomery v. City of Ft. Pierce, *et al.*, 106 Fla. 845, 143 So. 733.

A provision in a municipal bond that "for the prompt payment hereof, both principal and interest as the same become due and payable, the full faith, credit and resources of the" named city "are hereby irrevocably pledged" is in legal effect an express undertaking by the municipality that it is obligated to in good faith use its resources *as may be authorized or required by law* for the prompt payment of the principal and interest of the bond as it becomes due and payable under its terms.

Such provision in a municipal bond does not create a lien upon any municipal property; nor does it enlarge the obliga-

tion of the bond or the means of its payment beyond the requirements of controlling statutes. A provision of such nature in a municipal bond does no more than express an understanding and appreciation of the legal obligation to pay the bond according to its terms as such terms may be supported or restrained or modified by the statutory provisions under which the bond was authorized to be issued; and that the resources of the municipality are thereby pledged for the faithful performance of the contract obligation to the extent and in the manner as may be provided by law.

If the municipality had statutory authority to pledge by mortgage or otherwise its utility plants or the net income therefrom to the payment of the bonds here involved, the quoted provision alleged to be contained in the bonds, that the full faith, credit and resources of the city are pledged for the payment of the bonds, does not constitute a lien by pledge or mortgage or otherwise on any property. In Middleton v. City of St. Augustine, 42 Fla. 287, 29 So. 421, the statute expressly made a particular municipal utility subject to the bonds.

The bonds in this case were not issued under Section 3008 (1898), C. G. L.; and "the funds, credit and property" of the city were not pledged under said section 3008 (1898), C. G. L., by the provision in the bonds that "the full faith, credit and resources" of the city are irrevocably pledged for the payment of the bonds. Section 3008 (1898), C. G. L., contemplates the creation of a specific, definite "pledge" of "funds, credit and property" of the municipality "for the redemption" of loans made to the municipality

Even if, as alleged in the alternative writ, the bonds "were issued for the sole purpose of raising funds to apply on, extend and improve the electric light and water system

belonging to said municipality," and even if it can be assumed in the absence of proper allegations that the proceeds of the bonds were in fact so used, that alone would not afford a lien upon such property. Nor would it give bondholders a right in the net income therefrom, so as to warrant the issuing of a peremptory writ of mandamus to require payments on the bonds from the net income derived from the municipal utilities.

A writ of mandamus in a case like this is in the nature of an execution issued on a money demand that is fully established by the due presentation in appropriate procedure of unpaid and past due bonds or coupons issued under statutory authority; but such writ does not have the scope of an execution issued upon a judgment at law or upon a decree in equity predicated upon the non-payment of the bonds.

It is not alleged that the municipality has set apart or appropriated funds derived from the operation of its utilities or from other sources to be paid on bonds like those of the relator.

It is alleged that the officials of the municipality "have utterly failed and neglected to raise from taxation any funds whatsoever to be applied on said maturities of relator, and there is no tax money on hand, possession or control of said municipality applicable thereto from taxation."

The relator has a right to require tax levies to be made under the statute for the payment of the bonds; and his failure to enforce his right does not authorize a mandamus to require payments to be made on the bonds from funds derived from the income of the municipal utilities in the absence of statutory or authorized contractual duties to make such payments. Income from municipal utilities may be a resource of the municipality, but it is not a resource which the statutes make available to a bond holder in manda-

mus proceedings, there being no statutory duty to so apply such income, and no authorized contractual duty to do so, at least when such a fund has not been set apart and thereby made applicable to bond payments.

While writs of mandamus may be enforced upon equitable principles, proceedings on such writs may not be used to determine or enforce equitable rights.

It is in effect alleged that the income from the municipal utilities after paying the necessary operating expenses of such utilities should be applied on the payment of interest on relator's bonds; that none of said income has been so applied, notwithstanding the duty of the city to do so; and that such funds being insufficient to pay all the bonded indebtedness of the city, the relator being the first to bring a mandamus action for such payments should have preference.

It is further alleged that the city has outstanding defaulted bonds in excess of $1,400,000.00 and the tax levy is now so high that to place any more thereon would be futile and insufficient, and produce no material tax money; therefore, relator can reasonably only rely on proceeds derived from the sale of electrical current and water belonging to the city for payment of his bonds; that the city now has funds in its custody, possession and control derived from sources of electric light and water funds applicable and sufficient to pay $500.00 to be applied on said light and water interest coupons of relator; that demand for payment has been made and refused.

The above allegations are insufficient to sustain a conclusion that income from the municipal utilities are applicable to payment on relator's bonds under the statutes of the State. There is no statute making it the duty of the city officials to apply income from municipal utilities to

payment of municipal bonds, and it is not alleged that such income has been duly set apart for that purpose so that mandamus may be invoked. No lien upon such income for bond payment purposes is shown even if such a lien could be enforced by mandamus.

Motion to quash sustained.

DAVIS, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.