**THE STATE OF FLORIDA, et al., v. THE CITY OF LAKELAND, et al.**

16 So. (2nd) 924                      June Term, 1943
October 28, 1943                             En Banc
Rehearing Granted November 23, 1943

*E. E. Calloway, Raymond C. Smith, John S. Edwards* and *L. Grady Burton,* for appellants.

*H. N. Casebier, Thos. W. Bryant, E. Snow Martin* and *Walton, Lantaff, Atkins & Carson,* for appellee.

SEBRING, J.:

This appeal is from a final decree validating City of Lakeland "Refunding Bonds, Series 1943", in the amount of $5,350,000, to be issued for the purpose of refunding a like amount of outstanding bonds of the City designated, respectively, "General Refunding Bonds, Issue of July 1, 1936" and "General Refunding Bonds, Issue of July 1, 1939." The underlying debt extended by the 1936 and 1939 refunding issues was evidenced, originally, by bonds validly issued in 1912, 1915, 1924 and 1926, all of which pledged, either the "full faith, funds, property, credit and resources," or the "full faith, credit, and resources," of the City for the retirement of the principal and interest thereof. The final decree validating the General Refunding Bonds of 1936, and of 1939, recognized the pledges theretofore made, by authorizing the refunding issues to be payable in the same manner and from the same funds and resources and to carry the same security and contract rights as the original bonds thereby refunded.

In the present refunding program the City seeks, in terms, to pledge not only ad valorem tax revenues to the payment of the bonds but also "surplus net revenues" derived by the City from the operation of its light and water system, to the extent that ad valorem tax collections shall prove insufficient to fully service the bond obligation.

It is first contended by the respondents that such pledge may not be made without the approval of the freeholders of the municipality, for that an express pledge of future unappropriated revenues from these utilities materially enlarges the original contract between taxpayer and bondholder, and increases the security for the payment of the indebtedness; which may not be done unless authorized by the vote of a majority of the freeholders of the City who are qualified electors. See Section 6, Article IX, Constitution of Florida; City of Ft. Myers v. State, 129 Fla. 166, 176 So. 483; State v. City of Sanford, 128 Fla. 171, 174 So. 339.

The City's argument in reply to this contention is that under the pledge of the "full faith, funds, property, credit, and resources" of the municipal corporation, contained in the original bonds, the "surplus net revenues" of the light and

water system were pledged to the payment of the original funded debt and constituted a part of the security for its payment; and that the provision expressly·pledging "surplus net revenues," now sought to be incorporated in the 1943 Refunding Bonds, does no more than preserve the pledge originally made, to the end that such revenues shall be and remain a part of the security for the payment of the original debt, as now extended.

We cannot agree that "surplus net revenues" of the light and water system of the municipality have ever been "pledged" to the payment of the debt, in the sense that the City now uses the word. In our view the pledge contained in the original obligations no more constitutes an express pledge of surplus light and water revenues, in the legal sense of the term, than it does of surplus funds derived from other municipal functions, either proprietary or governmental. In fact, such pledge does not create a specific lien on any particular property. It does no more, in legal effect, than express an undertaking by the City to be irrevocably obligated, in good faith, to use such of its resources and taxing power as may be authorized or required by law for the full and prompt payment of the principal and interest of the obligation as it becomes due under its terms. Such was the construction placed by the court on a pledge of similar wording in the case of State ex rel. Babson v. City of Sebring, 115 Fla. 176, 155 So. 669. And, although it has been argued in briefs that what was said there on the point was dicta and not necessary to the decision at hand, the fact remains that, whether dicta or not, the statement made is, nevertheless, a clear expression of the correct rule of law on the subject, which we adopt here as being appropriate to the facts of the present case. See State, et al., v. County of Citrus, et al., 116 Fla. 676, 157 So. 4; Bonds and Bond Securities, Jones, Vol. 1, Sec. 415.

It takes but a moment's reflection to understand that an express pledge of revenues to be derived from a particular source does something different than this. Such pledge creates a lien or charge upon the specific revenues designated, whether then or thereafter collected, to the extent, and for the life, of the pledge; and until the underlying obligation is

satisfied, precludes the lawful appropriation of such revenues to any other governmental function or municipal purpose that will be prejudicial to the payment of the debt for which the pledge was given.

No illustration can make this clearer, we think, than the provisions of the pledge here sought to be incorporated in the present refunding bonds. By the terms of the refunding resolution "surplus net revenues" are considered to mean all sums remaining from gross revenues from the water and light system, after there shall have been first deducted only reasonably necessary expenses of maintaining said system, and a sufficient sum to retire principal and interest of a prior indebtedness incurred for an extension of the water and light facilities. To insure the application of such surplus net revenues to the uses pledged, the City covenants that it will not use such revenues for purposes other than that contemplated by the resolution, in an amount which might render the money in the fund set up for that purpose insufficient to meet the obligations imposed on it by the resolution. The City likewise agrees that it will not dispose of or encumber the plant, or any substantial part thereof; that it will maintain insurance thereon for the benefit of the bondholders; and that it will not issue obligations payable from such revenues having *priority* over the bonds in question. Obligations may be issued on an *equality* with the bonds sought to be validated, provided, that the same are issued only for the purpose of improving, extending, or repairing the present system; that none of the present bonds are then in default as to principal and interest; and that approval from nationally recognized utility engineers can be secured showing that revenues from the improved, extended, or repaired system will pay the expenses of maintaining and operating the same, will pay off and discharge principal and interest of the outstanding indebtedness including the 1943 Refunding Issue, and will pay principal and interest on the new obligations so proposed to be issued for such extended facilities.

There can be no doubt but that such a pledge provision, if allowed to be incorporated in the 1943 Refunding Bonds, will materailly enlarge the original contract and will increase

the security for the payment of the indebtedness. At present, only the general taxing power of the municipality is primarily liable for the payment of the debt; with the bondholder—in case of default—being put to satisfaction from this source, or from assets of the municipality not then appropriated, or held in trust, for municipal uses or purposes. See Little River Bank & Trust Co. v. Johnson, Mayor, et al., 105 Fla. 212, 141 So. 141; City of Coral Gables v. Hepkins, 107 Fla. 778, 144 So. 385; City of Sanford v. Dofnos Corporation, 115 Fla. 795, 156 So. 142. But if a fund from an express pledge of "surplus net revenues" is authorized, another direct primary source of revenue will be created thereby, which might not otherwise be available for the discharge of the debt; thus, and to the extent that such supplemental fund may be required for such purpose, placing upon such revenues the primary obligation for debt service.

The appellants next object to the provision appearing in the refunding resolution authorizing the redemption of outstanding bonds prior to maturity. According to the refunding plan, the refunding bonds to be issued are to be dated July 1, 1943, and are to mature in series beginning three years after date and continuing to July 1, 1971. Interest is agreed to be paid at the rate of three per cent. per annum for the first year following the issuance date of the bonds, four per cent. per annum for a period of four years immediately succeeding the expiration of said first year, and three per cent. per annum thereafter until paid. Bonds maturing on July 1, 1960, and thereafter, are subject to redemption on July 1, 1959, and on any interest payment date thereafter, in inverse numerical order; the City agreeing to pay in case of such redemptions par and accrued interest, plus an additional one year's interest of 2½ per cent. of the face, in the event of the redemption of any bond on July 1, 1959. Thereafter, in the event of redemption of bonds, such additional interest is payable at the reducing rate of ¼ of one per cent. per annum in 1960, and succeeding years, until the year 1969 has been reached. Bonds remaining outstanding in 1969 may be redeemed in 1969, and thereafter, without the payment of additional interest.

The appellants contend that such redemption provision is prohibited by Chapter 132 Florida Statutes 1941. We find ourselves unable to agree with this contention. The section providing for redemption of bonds prior to maturity appears to present a plan for orderly and sound refinancing of an outstanding indebtedness, that will result in an estimated interest saving to the City of approximately four million dollars over the period of the bonds. The original bonds sought to be refunded provided for the payment of interest at varying rates from five per cent. per annum to six per cent. per annum during the life of the obligation. The present issue bears interest for the greater portion of its term, at three per cent. In no event will the redemption clause—if ever availed of— require the payment of interest over the period, in excess of the interest required to be paid by the terms of the original issue, or in excess of that authorized by Sec. 132.03 Florida Statutes 1941.

So far as we have been able to find, no existing applicable statute prohibits the insertion of such a redemption clause as has been adopted by the City in its refunding resolution. Chapter 132 Florida Statutes 1941 provides, in effect, that the governing board of the City, in its discretion, may reserve the right to redeem all or any of the bonds at par before maturity upon terms and conditions to be fixed by resolution. Section 132.03 Florida Statutes 1941. It provides, further, that such unit may obligate itself to redeem any or all of its refunding bonds before maturity on such terms and conditions as the resolution authorizing such bonds may determine. Sec. 132.04 Florida Statutes 1941. Moreover, the same bonds may bear different rates of interest at different times. Section 132.06 Florida Statutes 1941. This would seem to be ample authority to sustain the validity of the redemption provision here brought in question. We are unable to say that the inclusion of such a provision, as a part of a comprehensive plan for the retirement of the indebtedness and at considerable interest savings to the taxpayers, requires the approval of the freeholder electorate before it may be adopted.

All other questions raised by appellants have been duly

considered, and we find that they present no meritorious objections to the entry of the decree here being considered. Except in the particulars herein noted, the final decree is in conformance with law, and is sustained by the record.

It follows, from what we have said, that the decree appealed from should be reversed, and the cause remanded to the circuit court, with directions to enter its decree validating the issue of refunding bonds herein brought in controversy when and after appropriate amendments have been made in the proceedings for issuance and validation of said bonds to conform to the holding of this opinion.

It is so ordered.

BUFORD, C. J., BROWN, CHAPMAN and THOMAS, JJ., concur.

TERRELL and ADAMS, JJ., dissent.

#### ON REHEARING GRANTED

PER CURIAM:

A majority of the Court is of the opinion that the original opinion prepared by Mr. Justice SEBRING and adopted as the majority opinion, and filed here on October 28, 1943, should be adhered to.

Circuit Judge Walker sat on rehearing in lieu of Mr. Justice TERRELL and adheres to the SEBRING opinion. Mr. Justice ADAMS dissents. Mr. Chief Justice BUFORD is convinced that the holding in the SEBRING opinion overrules the holding in the case of State v. City of Bartow, 147 Fla. 67, 2 So. (2nd) 125, and that the Bartow case insofar as it is overruled herein, should be definitely so held.

The majority of the members of the Court who adhere to the SEBRING opinion think the two opinions are not in conflict, while Mr. Justice ADAMS thinks that the SEBRING opinion does overrule the opinion in the Bartow case and that the opinion in the Bartow case should be adhered to and that the decree of the chancellor in this case should be affirmed.

On rehearing Mr. Justice TERRELL did not participate on account of necessary absence.

It therefore follows that the majority opinion of October 28, 1943, is adhered to and the judgment therein entered is approved.

BUFORD, C. J., BROWN, CHAPMAN and ADAMS, JJ., and WALKER, Circuit Judge, concur.

SEBRING and THOMAS, JJ., agree to conclusion.

TERRELL, J., not participating.