STATE, *ex rel.* PINELLAS COUNTY, *et al.,* v. HONORABLE DAVE SHOLTZ, Governor, *et al.*

155 So. 736.

Opinion Filed June 22, 1934.

*John C. Blocker,* for Relators;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistants, for Respondents.

DAVIS, C. J.—This is a mandamus proceeding in which the question presented is whether or not the State Board of Administration has authority, upon being directed by the board of county commissioners of a county exercising the powers of a special road and bridge district within its territorial jurisdiction, to accept refunding bonds issued by the special road and bridge district for a like amount, par value, of bonds theretofore issued by the same district, the original

bonds to be exchanged being at the time held by the State Board of Administration for the account of the sinking fund of the county and the sinking fund of the several road and bridge districts located therein.

The command of the alternative writ requires the respondents, Dave Sholtz, Governor, J. M. Lee, Comptroller, and W. V. Knott, State Treasurer and ex-officio county treasurer of Pinellas County, and of Special Road Districts Numbered 1, 3, 11 and 13, as and constituting the State Board of Administration under Chapter 14486, Acts of 1929, to accept and exchange a like amount of refunding bonds of Special Road and Bridge District No. 11 of Pinellas County, for a like amount of the orignial bonds of said District No. 11 described in the writ as constituting a part of the Pinellas County General Road and Bridge Interest and Sinking Fund, as well as the interest and sinking funds of Special Road & Bridge Districts Nos. 1, 3, 11 and 13. Respondents by their return admitted the material allegations of the alternative writ but denied the existence of any plain, legal duty to execute its commands. So the case is now before us on relator's motion for a peremptory writ, the return to the contrary notwithstanding.

The resolution adopted by the County Commissioners of Pinellas County out of which the supposed duty is alleged to have devolved upon the State Board of Administration to do the things the alternative writ commands, is as follows:

"WHEREAS, Pinellas County through its Board of County Commissioners and under the provisions of the laws of Florida has heretofore issued general obligations for road and bridge purposes, and various road and bridge districts have heretofore been created which have issued bonds for road and bridge purposes; and

"WHEREAS, the Boards of Bond Trustees of the various

issues were abolished, and the custody, care and control of all bond issues and the several sinking funds relating thereto was placed under the supervision and control of the Board of County Commissioners, by virtue of Chapter 11858, Acts of 1927; and

"WHEREAS, the Board of Administration, composed of the Governor, State Comptroller and State Treasurer, was created for the more economical administration of the road and bridge indebtedness of the State and the custody of all securities relating thereto was placed in the State Treasurer as County Treasurer Ex-Officio, for the use and benefit of the said county and its special road and bridge districts, under the provisions of Chapter 14488, Acts of 1929, known as Section 247, C. G. L., 1932 supplement; and

"WHEREAS, the authority to make investments, to dispose of securities, to issue refunding bonds, to exchange refunding bonds for original bonds and to otherwise direct the affairs of Pinellas County's general bonded indebtedness and its special road and bridge district bonded indebtedness, is still vested in the Board of County Commissioners (Chapter 15772, Acts of 1931; also, Chapter 15890—Kanner Bill—Acts of 1933); and

"WHEREAS, the Board of Administration and W. V. Knott, State Treasurer, as County Treasurer Ex-Officio of Pinellas County, Florida, have in their custody certain bonds, to-wit:

| | |
|---|---:|
| Special Road and Bridge Dist. No. 11 Bonds, Nos. 151/181, inc., dated 6-1-25, due 6-1-41 | $31,000.00 |
| Special Road and Bridge Dist. No. 11 Bonds, Nos. 715/724, inc., dated 6-1-25, due 6-1-53 | 10,000.00 |

Special Road and Bridge Dist. No. 11
Bonds, Nos. 182/200, inc., dated 6-1-25,
due 6-1-42 _____ 19,000.00
Special Road and Bridge Dist. No. 11
Bonds, Nos. 311 and 312, dated 6-1-25,
due 6-1-46 _____ 2,000.00

$62,000.00

under and by virtue of authority of Chapter 14486, General Laws of 1929, which said bonds have been heretofore issued by Special Road and Bridge District Number Eleven of Pinellas County, Florida, and which said bonds have heretofore been acquired as investments for and are now owned by the following sinking funds, to-wit:

| Held for Account of | Nos. | Due | Amount |
|---|---|---|---|
| County-wide Issues | 151/181 | 6/1/41 | $31,000.00 |
| | 715/724 | 6/1/53 | 10,000.00 |
| Special R. & B. Dist. No. 1 | 182/187 | 6/1/42 | 6,000.00 |
| Special R. & B. Dist. No. 3 | 188/195 | 6/1/42 | 8,000.00 |
| Special R. & B. Dist. No. 11 | 196/200 | 6/1/42 | 5,000.00 |
| Special R. & B. Dist. No. 13 | 311/312 | 6/1/46 | 2,000.00 |

$62,000.00

"And, whereas, subsequent to the acquisition of said bonds by the aforementioned officials, under and by virtue of authority of Chapter 14486, *supra*, the Board of County Commissioners of Pinellas County for and in behalf of Special Road and Bridge District Number Eleven has caused the refunding of the original bond issue of said district then outstanding in the sum of $990,000.00, under and by virtue of authority of Chapter 15772, General Laws of 1931, which said refunding bonds have been validated by a decree of the Circuit Court in and for Pinellas County, Florida, ac-

cording to the statute made and provided for, and that said refunding bonds so issued and validated are now in the custody of the escrow agent, to-wit:

"The First National Bank of Wichita, Kansas, awaiting actual exchange and delivery under and by virtue of Chapter 15772, *supra,* and of the resolutions passed by this body by authority of said Chapter 15772; that more than eighty per cent. of said refunding bonds have been actually exchanged; and

"WHEREAS, the several sinking funds heretofore mentioned owning the aforesaid original bonds are in need of the interest now matured on said original issue which has not been paid and which cannot be paid except by the exchange of the original bonds for refunding bonds; and

"WHEREAS, this Board has been advised that under and by virtue of authority of the laws of Florida relating to the subject matter hereof that it has authority to direct the aforesaid officials to exchange the aforesaid bonds of said district for a like amount of refunding bonds of said district and that such authority to make such exchange is not within the power of any officials of the State of Florida other than this body; and

"WHEREAS, this Board is desirous and willing for and on behalf of Pinellas County and for and on behalf of the several special road and bridge districts involved, and has found and determined that it is to the best interests of the citizens and taxpayers of Special Road and Bridge District Number Eleven, and of the county and the several road and bridge districts owning the various sinking funds herein involved, that the aforesaid exchange be made in the manner and form herein set forth,

"*Now, Therefore, Be It Resolved* by the Board of County Commissioners of Pinellas County, Florida, acting for and

on behalf of Pinellas County and the several special road and bridge districts herein involved—

"That the Board of Administration and W. V. Knott, State Treasurer, as County Treasurer Ex-Officio, as the fiscal agent of Pinellas County and of the several special road and bridge districts thereof and the custodian of the securities and investments of the various sinking funds of Pinellas County and its special road and bridge districts, be and they are hereby directed to exchange the following bonds, to-wit:

| | |
|---|---|
| Special Road and Bridge Dist. No. 11 Bonds Nos. 151/181, inc., dated 6-1-25, due 6-1-41 _____ | $31,000.00 |
| Special Road and Bridge Dist. No. 11 Bonds Nos. 715/724, inc., dated 6-1-25, due 6-1-53 _____ | 10,000.00 |
| Special Road and Bridge Dist. No. 11 Bonds Nos. 182/200, inc., dated 6-1-25, due 6-1-42 _____ | 19,000.00 |
| Special Road and Bridge Dist. No. 11 Bonds Nos. 311 and 312, dated 6-1-25, due 6-1-46 _____ | 2,000.00 |
| | $62,000.00 |

for a like amount of said refunding bonds of Special Road and Bridge District Number Eleven, upon receipt of such refunding bonds."

Under the laws of Florida (Chapter 15772, Acts of 1931) authorizing counties, cities, towns and other municipalities, special road and bridge districts and other districts in the State of Florida to issue refunding bonds, such refunding bonds are in legal effect authorized projections into the future of the original contractual obligations represented by

the bonds which are lawfully refunded, and are now so recognized in the Constitution itself by Section 6 of Article IX of the State Constitution as amended in 1930 by Senate Joint Resolution No. 26 submitted to the electors by the Legislature of 1929 (See page 784, 1929 General Session Laws).

Section 6 of Article IX of the State Constitution as amended in 1930, contains an express organic confirmation of the right to issue refunding bonds when same are issued exclusively for the purpose of refunding bonds, or the interest thereon, of counties, district or municipalities. And Chapter 15772, Acts of 1931, was enacted at the first legislative session held after the approval of the 1929 constitutional amendment, in order to give effect to the recognized characteristics of refunding bonds as imputed to them by the necessary implications to be found in the terms of amended Section 6 of Article IX.

Thus, refunding bonds are not only obligations in themselves for what they purport to be on their face and under the statutes pursuant to which they are issued, but are authorized extensions and continuations of the obligations represented by the bonds that are refunded by them, which original obligations are not extinguished by but are merged into the refunding bonds with like force and effect as if the original bonds had remained unrefunded by the issuance of such refunding bonds.

We are of the opinion, however, that while the State Board of Administration may have the authority, upon the several premises and under the amended statutes referred to in the resolution of the Pinellas County Commissioners, to exchange original bonds for refunding bonds as requested by the county commissioners, that no mandatory duty in that respect devolves upon the State Board of Ad-

ministration to make such exchange, simply because it is insisted upon by the board of county commissioners under the circumstances existing in this case, hence a peremptory writ of mandamus in this case should not be ordered.

Fundamentally, the proper course of procedure to be followed in order to bring about a judicial determination of a proposition such as that here presented, is for the State Board of Administration, by bill in equity filed by it in its capacity of statutory trustee, to submit to the approval of a chancellor the propriety of a desirable and authorized reinvestment of sinking funds in any new forms of securities, such as by the exchange of original for refunding bonds (where the circumstances and the law controlling the case may warrant). By that means only can adequate opportunity be given to all parties in interest to appear and have their objections, if any, heard and adjudicated in due course of legal procedure. Such a proceeding in equity is in its essence a proceeding *in rem* affecting the status of existing funds and securities going to make up a sinking fund in the custody of the State Board of Administration as statutory trustees. And applicable statutes relating to constructive service upon known and unknown persons having an interest in such existing funds and securities, afford an adequate means for effectuating appropriate judicial determination of the propriety of making needful changes in the constituent securities of which sinking funds are authorized to be made up under the law.

Mandamus is not an effective substitute for a proceeding in equity such as that just described; therefore, the peremptory writ in the instant case must be denied.

Peremptory writ denied.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—While I concur in much that is said in the foregoing opinion, I cannot see that it is necessary for the Board of Administration to resort to a proceeding in equity in order to get authority to carry out the exchange of the original bonds for the refunding bonds as directed by the resolution adopted by the Board of County Commissioners of the county. In their return, the respondents, composing the Board of Administration, show that the respondents, in a meeting duly assembled, received and considered the request and directions contained in said resolution, and that the respondents were then and are now of the opinion that it would be to the best interest of Pinellas County and of special road and bridge districts mentioned in the resolution, for the respondents to comply by the directions of the resolution, and that they desired at that time and do now desire to carry out said request and direction, but doubted their authority so to do under the power vested in them by Chapter 14486 of the Acts of 1929, and Acts amendatory thereof. Indeed they allege that they have no such authority.

It is true that the Board of Administration Act and the Acts amendatory thereof, do not contain any special provision with reference to exchanging original bonds for refunding bonds, but I am satisfied that the board had implied authority so to do, when so directed by a resolution of the kind quoted in the majority opinion and under the facts and circumstances therein set forth. Indeed, they not only have implied authority to make such exchange, but to my mind, it is their clear legal duty to comply with the directions of the resolution adopted by the board of county commissioners, and that the board of county commissioners have the clear legal right to demand the performance of such duty, under the facts and circumstances disclosed by

the resolution and in the return of the respondents, without the loss of time, and the trouble and expense which would be entailed by resorting to such a proceeding in equity as is suggested in the majority opinion. In the Attorney General's brief it is said:

"The only reason why the respondents refused to accept the refunding bonds is that they are uncertain as to their legal authority to do so. They are in the position of a trustee who is seeking instructions from the court as to whether or not he shall do a certain act."

The Attorney General admits that the Board of County Commissioners of Pinellas County is the governing body of the county and of the special road and bridge districts located therein insofar as the refunding of bonds and the creation and maintenance of the various sinking funds are concerned. See Sections 2321, 2322, 2323 and 2687, Comp. Gen. Laws, and Chapter 15572, Acts of 1931. He admits that under the last cited statute the board has authority to refund the general road and bridge bonds issued by the county and all bonds issued by any special road and bridge district located therein, and that it is the duty of the board of county commissioners to levy whatever taxes are necessary in order to pay the principal and interest of the bonds issued by the county and the said special district located therein. He also admits that we are here dealing with assets that may be considered as county funds.

Article VIII, Section 6, of our Constitution provides among other things that:

"The Legislature shall provide by law for the care and custody of all county funds and shall provide the method of reporting and paying out of such funds."

In discussing this provision of the Constitution, this Court,

in the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308, said:

"This commits to the Legislature the broadest possible authority as to the 'care, custody, reporting and paying out' of *all* county funds. It vests in the Legislature the authority to create the board of administration provided in Senate Bill 1, for the 'care, custody, reporting and paying out' of such county funds. The authority of the board, so far as the county funds are concerned, extends no further. The board is the mere fiscal agent of the county for designated purposes. It has no authority to perform any of the discretionary functions with reference to such funds which properly belong to local county officers."

This statement that the State Board of Administration is the mere "fiscal agent," was reiterated by this Court in the case of State, *ex rel.* Gillespie v. Carlton, 103 Fla. 810, 138 So. 612. Under the general principles of the law of agency, the term "agent" connotes the existence of a principal, and it is the duty of the agent to obey the lawful directions of the principal. It is true that it was also held in the case just cited that the duties which the State Board of Administration may be required to perform are those fixed by statute and by statute alone. However, there may be under a statute an implied duty as well as an expressed duty. Thus, in the case of State, *ex rel.* Gillespie v. Carlton, *supra,* this Court, in discussing the authority of the Board to pay interest first and then pay principal due on bonds, when the funds in its hands were not sufficient to pay both, said:

"The statute is silent as to what shall be done by the board in a situation such as is here presented. It is plain, however, that what the board is doing is in perfect harmony with the spirit, intent, and purpose for which Chapter 14468, Acts of 1929, Ex. Sess., was enacted. It clearly cannot be

said that what the board avers it is doing is in violation of any special or implied provision of the Legislative Act, which by the creation of a board, a collective body composed of high State officers, suggests some measure of discretion on its part to deal with the practical administration of the law in cases where the statute gives no direction."

But the State Board cannot encroach upon the discretionary functions of the local county officers. Section 11858, Acts of 1927, grants to the Board of County Commissioners of Pinellas County the authority to reinvest the funds belonging to its various interest and sinking funds, prior to the creation of the Board of Administration. This power must be presumed to still exist unless withdrawn by some subsequent Act of the Legislature. This has not been done, in my opinion. The Board of Administration Act of 1929 provides that all securities, moneys and claims of the sinking fund shall be turned over to the State Treasurer, "to be held by him for the use and benefit of said county or special road and bridge district." Said board is not given any power to invest any funds to the credit of the county or any of its special road and bridge districts except upon the approval of the board of county commissioners. Nowhere in this Act is the power to reinvest such sinking funds expressly or impliedly withdrawn from the board of county commissioners, although the actual custody of such securities and moneys of the various sinking funds is placed in the hands of the Board of Administration. But, as we have said, it is placed in its hands as the fiscal agent of the county. Broadly speaking, the State Board of Administration is only clothed with ministerial or administrative duties, as fiscal agents of the county for certain designated purposes, and vested with a limited discretion as to the *methods* to be used to carry such purposes into effect. The Act creating

it left the county commissioners with full power to fix the rate and make the levy of all ad valorem taxes, to issue refunding bonds, and to administer the general affairs of the county and its special road and bridge districts. It is necessarily incidental to the power to issue refunding bonds that the governmental unit issuing them shall have authority to exchange such refunding bonds for the bonds of the original issue, where the private holder is willing to make such exchange. We cannot see where the State Board of Administration has any power under the statute to exercise its will in such a matter contrary to the will of the local authorities for whom it holds the original bonds, not as owner, but as custodian and agent. The State Board cannot question the authority of the local officers when sought to be exercised for refunding purposes provided for by law. The agent has no right to disobey the lawful directions of the principal. Oxford Lake Line v. First National Bank, 40 Fla. 349, 24 So. 480. Undoubtedly, the real ownership of the original bonds held by the Board of Administration is vested in the taxing units, which under the statute above cited are governed by the Board of County Commissioners of Pinellas County.

The refunding bonds issued by Special Road and Bridge District No. Eleven, involved herein, were not issued under the Board of Administration Act, but under Chapter 15772 of the Acts of 1931, which gave the taxing units exclusive and complete authority to issue refunding bonds. See Sections 27 and 33 of said Chapter 15772. Surely the power to issue these refunding bonds carries with it all the necessary power pertaining thereto in order that the outstanding original bonded indebtedness may be refunded· and the object of the statute fully accomplished. See 59 C. J. 973

and Florida cases cited in note; also State, *ex rel.* Orrell v. Johnson, 147 So. 254, second headnote.

In the very fair and able brief filed by the Attorney General in this case, referring to the Board of Administration Act, it is said:

"The purpose of the Act was to benefit the taxpayers and property owners of the State. This result was to be achieved by transferring to the Board of Administration certain powers and duties in reference to administering the sinking funds of the counties and special road and bridge districts located therein, which sinking funds were created for the payment of bonds issued for the purpose of constructing roads. An equally important object of the Act was to protect the good faith and credit of the State and its various subdivisions, by providing a safe, just and economical administration of all public funds, by insuring their employment for the purpose for which they were created. State, *ex rel.* Orrell v. Johnson, *et al., supra.*

"At the time that the Board of Administration Act was passed by the Legislature, it was apparent that many of the counties and special road and bridge districts located therein would soon default in the payment of principal and interest on their road bonds. One of the reasons for the creation of the Board of Administration was to protect the public credit by minimizing defaults in the payment of principal and interest on bonds issued by the counties and special road and bridge districts located therein. One of the methods of minimizing these defaults was by permitting the defaulting taxing district to issue refunding bonds. The Board of Administration Act provided that refunding bonds might be issued under certain conditions. See Sections 9, 10 and 16.

"The Legislature not only recognized in the Act creating the Board of Administration the necessity for the counties

and special road and bridge districts refunding their bonds, but in 1931 there was enacted Chapter 15572, *supra,* known as the 'General Refunding Act of 1931.' Under this Act all counties and special road and bridge districts are authorized to refund their respective bonded debt. Under these circumstances it seems that the Act creating the Board of Administration and the 'General Refunding Act of 1931' may properly be considered in *pari materia.*

"To say that the Act has for one of its main purposes, the protection of the public credit, by minimizing defaults, and that one of the methods of carrying out this purpose is to permit the issuing of refunding bonds, and then say that the Board of Administration cannot accept such refunding bonds, in exchange for original bonds of the same district, which are owned by the sinking funds of the county and of the special road and bridge district located therein, is to say the least, a rather inconsistent position. While the Act does not specifically authorize the board to change the form of investments made by or on behalf of the various sinking funds which it administers, yet it might be said with considerable logic that this is an implied authority and in keeping with the spirit of the policy of the Legislature in reference to the bonded debt of the counties and special road and bridge districts therein."

For these reasons I am of the opinion that the motion for the peremptory writ should be granted.