JOHN L. FAHS, as Mayor of the City of Leesburg, *et al.,* v. S. L. KILGORE.

187 So. 170.
Division B.
Opinion Filed February 7, 1939.
Rehearing Denied March 15, 1939.

*J. M. Austin, D. C. Hull* and *Hull, Landis & Whitehair*, for Appellant;

*Rogers Wells* and *T. G. Futch,* for Appellee.

WHITFIELD, P. J.—This suit was brought to enjoin the City of Leesburg, Florida, from paying further interest on

the several classes of refunding bonds of the City, from funds on hand derived from tax levies authorized for that purpose. An appeal was taken from a decree granting an injunction and denying a motion to dismiss the bill of complaint: It is in effect contended by the appellee that the refunding bonds in the hands of purchasers are invalid, mainly on the ground that the several different classes of bonds that were refunded, were issued at different times when the city boundaries embraced extended or contracted areas; and that the several classes of refunding bonds do not correctly state the area liable to be taxed to pay the different classes of refunding bonds. The refunded and the refunding bonds were all issued by the same municipality and the classes of refunding bonds are intended to take the place of corresponding classes of the refunded bonds, so that the particular areas that were subject to taxation to pay the refunded bonds will be subject to taxation to pay the refunding bonds issued by the same city.

Even if there be inaccuracies in identifying the several classes of the refunding bonds with the areas that are severally liable to be taxed to pay the several classes of refunding bonds, the refunding bonds issued by the city under statutory authority will not thereby be rendered invalid, particularly after the issue and sale of the bonds.

It is a matter of administrative procedure to have the proper taxes levied against the taxable property in the appropriate areas of the city limits to pay the several classes of bonds. See State, *ex rel.,* v. City of Dunedin, 131 Fla. 857, 180 So. 24; State v. City of Clearwater, 125 Fla. 73, 169 So. 602. The ordinance providing for the issue of the refunding bonds as authorized by statute contains the following:

"That for the prompt payment of the principal and interest of all of said Refunding Bonds as the same shall

become due and which are issued pursuant to this ordinance, the full faith, credit, and a tax upon all the property within said City of Leesburg, Florida, are hereby irrevocably pledged to the same extent and with like force and effect as the same were pledged for the payment of indebtedness refunded by said bonds."

The bond copies in the record contains the following:

" * * * for the prompt payment of this bond, and the interest thereon, as the same becomes due, the full faith, credit, and taxing power of said City of Leesburg are hereby irrevocably pledged to the same extent and with like force and effect as the same were pledged for the payment of the indebtedness refunded hereby. * * *

" * * * there being no intention to pledge any security to the issue of bonds of which this bond is one in addition to the security pledged for the payment of the bonded indebtedness refunded thereby, nor to increase the obligation for the payment of the bonded indebtedness as refunded. * * *

" * * * that, before the issuance of the issue of bonds of which this bond is one, provision has been made for the levy and collection of a direct annual tax upon all property within said City, except only such property as would be exempt from taxation under the provisions of the laws and Constitution of Florida, which were in force and effect at the time of the creation of the indebtedness refunded hereby sufficient to pay the interest upon the issue of bonds of which this bond is one as the same shall become due, and to create a sinking fund for the payment of the principal thereof at maturity. All rights and remedies which were available for the support and enforcement of the bonded indebtedness refunded by this bond shall be available for the support and enforcement of this bond."

This court has announced the following principles:

"The amendment to Section 6 of Article IX of the Con-

stitution of Florida, approved in 1930, was designed as a specific limitation upon the pre-existing power of the Legislature to authorize the creation of any new or additional obligations upon the part of counties, districts or municipalities. The limitation expressed is absolute. And in the cases hereinbefore cited, it has been applied to every form of proposed contractual device intended as a future obligation of the taxing power, directly or indirectly undertaken regardless of form, in those instances where the question has arisen in the courts since the ratification of the amendment at the general election in 1930.

"What then is the meaning of the proviso that the restriction of this 1930 constitutional amendment shall not apply to 'the refunding of bonds,' etc.?

"The language adopted is expressive of nothing more than the clearly implied, if not expressly stated, idea that since the *obligation of contract* of those earlier outstanding 'bonds' cannot consistently with the Constitution of the United States (Section 10, Article I, U. S. Const.) be defeated by any default or neglect of the obligors in failing to provide payment when due, nor circumvented by the will of the electors in refusing to vote to authorize the making of new obligations to discharge what is already owed, if the latter course be found necessary, that in that event refunding bonds continuing the contractual obligation of the old bonds might be authorized by the Legislature, without regard to any consenting vote of the freeholders, such as would otherwise be required by the very terms of the amendment if this exception had not been incorporated therein.

"Thus construed, it will be seen that while a particular class of bonds described as refunding bonds may be authorized by the Legislature to be issued without any vote of

the freeholder electorate consenting thereto, the only authority left in the Legislature to provide for the issuance of such refunding bonds without a vote of the freeholders, is that power which is limited to a mere authorized extension of the old obligation of contract to the new bonds, when the latter purport to be issued 'exclusively' as refunding bonds to be used for the purpose of refunding the old bonds or the interest thereon.

"Otherwise expressed, it may be stated that the plan intended to be carried out by the proviso to amended Section 6 of Article IX of the Constitution with reference to that class of bonds usually described as ordinary refunding bonds, is to leave resident in the Legislature all of its pre-existing legislative power to issue bonds to be designated as refunding bonds, which, when authorized by the Legislature, issued and negotiated to take up earlier outstanding bonds or the interest thereon, will by force of the refunding statute and of the Constitution itself, merely subrogate the holders of such authorized refunding bonds to all the outstanding legal rights and remedies of the holders of the bonds refunded, and not attempt to enlarge the original obligation of the contract by imposing a greater liability than would be enforceable by legal means with reference to the original bonds, unless by consent of the freeholder electorate to the creation of such enlarged obligation, as provided in Section 5, Article IX of the Constitution, as amended." State v.. County of Citrus, 116 Fla. 676, t. 682-4, 157 So. 4.

"Purpose of statutory bond validation proceeding is to procure in advance final judicial determination of the validity of the bonds issued by counties or other political subdivisions (Comp. Gen. Laws 1927, Secs. 5106-5112)." State v. County of Citrus, H. N. 1, 116 Fla. 676, 157 So. 4.

It thus appears that the controlling law and the refunding

bonds provided that such refunding bonds are to be paid by the same processes and from the same duly authorized sources of revenue as the refunded bonds were to be paid.

When a statute adds territory to an existing municipality, it may provide whether, or to what extent if any, the added area shall become liable to taxation to pay the then existing debts of the municipality. See Hayes v. Walker, 54 Fla. 163, 44 So. 747.

Lands that have been by statute incorporated in a municipality and afterwards excluded from the municipality by statute or by judicial decree may under appropriate conditions be subject to just taxation to pay proportionately for bonds of the city issued for authorized municipal improvements while the excluded lands were within the city limits and subject to such taxation under the doctrine of *de facto* jurisdiction of a *de jure* municipality. See State v. Walthal, 125 Fla. 423, 170 So. 115; Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153; State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672.

Where refunded bonds were general obligations of the municipality but payment of such bonds had as additional security special assessments which the municipality was obligated to collect for use in such bond payments, the fact that the city has compromised the special assessments does not affect the validity of the refunding bonds which merely continued the liability and obligations of the refunded bonds. See Roundtree v. State, 102 Fla. 246, 135 So. 888; Little River B. & Tr. Co. v. Johnson, 105 Fla. 212, 141 So. 141; City of.DeLand v. State, 120 Fla. 402, 162 So. 892; State v. City of Sanford, 128 Fla. 171, 174 So. 339.

REVERSED.

BROWN and CHAPMAN, J. J., concur.

708

TERRELL, C. J., and BUFORD, J., concur in the opinion and judgment.

Justice THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.