## ASHTON v. TOWN OF DEERFIELD BEACH, BROWARD COUNTY, FLA.
### No. 11383.

Circuit Court of Appeals, Fifth Circuit.

April 26, 1946.

W. Terry Gibson, Herbert T. Gibson, and Samuel H. Adams, all of West Palm Beach, Fla., and Augustus T. Ashton, of Philadelphia, Pa., for appellant.

Morton B. Adams, of Miami, Fla., and Elliott Adams, of Jacksonville, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant Ashton, owning $6,000 of $323,000 principal of outstanding bonds issued by appellee dated January 1, 1926, appeals from an interlocutory decree approving a plan of composition under Chapter IX of the Bankruptcy Act, 11 U.S.C.A. § 401 et seq., and following, and especially by virtue of subsection j of Section 83, 11 U.S.C.A. 403, sub. j, in that bondholders who had accepted refunding bonds under a plan made operative in 1937 were included as consenting creditors in this proceeding. The appellant filed a statement of the points on which he would rely in his appeal under Federal Rules of Civil Procedure, rule 75(d), 28 U.S.C.A. following section 723c, to-wit: (a) The plan is inequitable in requiring all bondholders to deposit their bonds with Broward County Bondholders Protective Association. (b) The plan provides that the refunding bonds are to have all the

characteristics of the old bonds except maturities and interest rates which would be in violation of the present laws of Florida. (c) The plan includes an allowance of expenses to said Bondholders Association incurred prior to the filing of the petition and incident to the original voluntary plan, which are separate and apart from the expenses of this proceeding allowed by the Court. The appellant's brief specifies these additional points: That the present plan is not identical with the original plan, and Section 83, sub. j, cannot be applied; that the court has no power to allow amendments of the plan, either to remove objectionable features, or to make the new plan conform to the original plan; and that modifications made of the original plan are an abandonment of it as respects the application of Section 83, sub. j; that the court could not under Section 83, sub. j, complete a plan to which only assenters to the original plan assent, because the original plan was completed, and this composition proceeding is a mere club to force non-assenters, and is not filed in good faith.

Appellee protests the consideration of the questions not covered by the original points on appeal, but nevertheless argues them, and makes no claim of prejudice for lack of an adequate record on appeal. The requirement of Rule 75(d) (made applicable to appeals in bankruptcy by General Order 36, 11 U.S.C.A. § 53), that where the entire record is not specified by appellant to be sent up he shall specify the points intended to be relied on, is evidently intended to enable the appellee to determine what additional portions of the record he shall specify. The purpose is to get an adequate record for the purposes of the appeal. If a new question is raised in the appellate court and the claim is made that the record is incomplete touching it, the appellate court might well refuse to consider the question, unless the record could be supplemented. Where, as here, no such claim is made and the new questions appear to arise importantly upon the record presented, we may and should decide them. Adams v. New York C. and St. L. R. Co., 7 Cir., 121 F.2d 808.

These new questions all relate to the application in a municipal composition proceeding of Section 83, sub. j. This court in Re City of West Palm Beach, 5 Cir., 96 F.2d 85, held that where a plan of voluntary settlement of municipal debts had been carried out with most of the creditors, those fully settled with could not be counted as creditors on presenting the plan in court as a municipal composition in bankruptcy. Thereupon Congress enacted Section 83, sub. j, ordaining that "the partial completion or execution of any plan of composition as outlined in any petition * * * shall not be construed as limiting or prohibiting the effect of this title, and the written consent of the holder of any securities outstanding as the result of such partial completion or execution of any plan of composition shall be included as consenting creditors to such plan of composition * * *." This legislation is not a new grant of a peculiar bankruptcy jurisdiction. It merely enacts that the partial execution of a general plan before a petition is filed shall not prevent the plan from being presented in court as a plan or composition, and that those who took and hold thereunder new securities instead of their old ones are to be counted as creditors as though they still had the old. But the jurisdiction is still that prescribed for all municipal compositions, with the same general powers and duties in the court. But the fact that creditors are to be treated as consenters who have already been finally settled with under the plan requires that the plan presented to the court be the plan to which these creditors had before consented. This must be so, as pointed out in Wright v. City of Coral Gables, 137 F.2d 192, 195, in order to preserve the identity of situation of the consenting majority which makes it fair to bind the dissenting minority by their votes for the plan. It must be so also in order that creditors of the same class shall receive the equal treatment which is the great aim of the bankruptcy proceeding. But this does not mean that every detail and incident of the plan presented to the court must be identical with the original plan or that no alteration or amendment whatever can be made, even though the equality of treatment of all is preserved.

The Coral Gables decision cannot be so understood. The plan there offered to the court was held not to be an uncompleted voluntary plan. The court said: "What is significant is that the city in 1937 completed and thereafter entirely abandoned the voluntary plan it had offered in 1936 * * * and that the present proceeding is an entirely new proceeding and in no proper sense a completion of that plan." The abandonment was particularly shown by numerous settlements on a different basis afterwards made with creditors, and there was an express understanding that bankruptcy would not be resorted to. In the present case the plan was worked out between the Town and Broward County Bondholders Association in 1936 and there was in the plan an expressed purpose to complete it by bankruptcy if a municipal bankruptcy act should be passed. The plan, broadly stated, was to exchange the old bonds, on which interest to an amount of $142,000 and about $96,000 of principal also were in default, for new bonds dated July 1, 1937, for the same principal, but with later maturities and lessened future interest, to be accomplished by deposit with trustees of the Bondholders Association in a named Chicago bank; the expenses of the refund and exchange, with a charge for the Association's services to be paid out of collections of tax assessments prior to 1937 specially set apart for past due interest coupons. Of $323,000 of outstanding bonds all save $20,000 were thus deposited and exchanged for new bonds. Suits were brought on $11,000 of the unexchanged bonds, and this composition petition was filed July 9, 1942, covering the whole principal of $323,000, and offering the original plan "as the same is hereinafter modified or changed." The changes mentioned in the Town's resolution attached to the petition are that a fiscal agent is appointed to do all things necessary to institute bankruptcy proceedings, to get consents to the plan, and employ an attorney; that the cost of the proceeding including the fiscal agent's and attorney's compensation and other expenses to be allowed by the court not to exceed 2% of the principal indebtedness should be shared by the Town and the creditors equally, or in such propor-tion as the court shall fix; but the proportion to be paid by the Town to be payable in five annual instalments. These changes, relating to the bankruptcy proceeding itself, are not a material departure from the original plan.

The court, however, found that in the previous operation of the plan the Association and the Town had so managed the collection of the old coupons maturing before July 1, 1937, and the taxes applicable to them, as that the depositing bondholders had secured an advantage, and refused to entertain the plan unless it was amended to remove this inequality. The Town thereupon confessed that in working out the plan as to the old coupons $20.70 had been received by each bond deposited for refund which the twenty undeposited bonds had not gotten, and it offered to continue to collect delinquent taxes applicable to such coupons and apply them to the coupons on these undeposited bonds till each had received $20.-70, the coupons to be retained until so equalized. Another amendment offered related to the expenses of the Association, and showed a balance due it by the Town of only $110, which the Town offered to pay, and to receive for cancellation the remaining old coupons in the hands of the Association as provided in the plan. These amendments were approved, and held to remove the objections to the plan. The judge, however, required the equalizing payments of $20.70 to be made into the registry of the court, and to be distributed thence to the undeposited coupons maturing prior to July 1, 1937. He also ignored the requirement of the plan that the bonds be deposited with the Association and exchanged through the Chicago bank, and ordered the exchange to be made through the clerk of the Court.

None of these departures from the original plan altered its substance or disturbed the equality of treatment of creditors, but rather promoted it. The elimination of the Association and the distant bank was a proper result of the court proceeding, was for the convenience of the parties, and gives appellant no ground of complaint. Nothing has occurred that ought to make Section 83, sub. j, inapplicable to the case.

 Some argument is made as to the good faith of the Town in resorting to the bankruptcy court. The record shows it to be a mere hamlet, led into excessive debt by the delirium of the Florida real estate boom of. 1925, unable to carry its debt service, or even render the ordinary municipal services though reduced to one policeman, and a combination Clerk-tax-assessor-and-collector, who also operates the Town's water plant. Even with the lowered interest rate the Town can barely operate. If ever a small community needed the aid of a debt composition this one did and does.

As to the points specified as intended to be relied on in the appeal little need be said. As to the first point (a), that the plan is inequitable in requiring all bondholders to deposit their bonds with the Association, we have seen that this requirement, perhaps advisable when the plan was first put forward, has been disregarded by the court since bankruptcy has intervened. Appellant has not been subjected to this asserted inequality, and no one else has complained.

 (b) The plan states, "The holders of the refunding bonds shall be entitled to all rights and remedies which were available to holders of the bonds refunded at the time of their issuance, and all laws enacted and constitutional amendments adopted since the issuance of the bonds refunded which are ineffective as to the bonds refunded shall be ineffective as to the refunding bonds." The refunding bonds contain the same provision. Appellant points out that since the original bonds were issued a large area of land has by State legislation and by court proceedings been excluded from taxation by the Town, and it is contended that this land can be taxed to pay the old bonds, but not the new ones, so that the plan on this point cannot be carried out and ought not to be approved. It is not for us in this proceeding to adjudge the liability of anyone to taxation, Green v. City of Stuart, 5 Cir., 135 F.2d 33; but we are of opinion that this refunding by exchanging one bond for another of later maturity and less interest, under an agreement like that quoted, does not make a new debt, but the old one remains, and the obligations of the contract which created it, except as they are waived by changing the maturity and interest rate, continue, and stand a very good chance of the same protection under the Contract Clause of the federal Constitution. Article 1, § 10. We do not think the contrary is so clear as to condemn this plan for undertaking to retain the status of the old debt in the renewing of it by the new bond.

 (c) As to the expenses allowed the Association, the court had authority to allow such expenses and compensation in the preparation of the plan and obtaining consents, Section 83, sub. b, 11 U.S.C.A. § 403, sub. b. Since Section 83, sub. j, permits this proceeding to take up and complete a plan begun several years before, and nearly 95 percent effectuated, we see no reason why services and expenses touching it are not allowable from its inception. Vallette v. City of Vero Beach, 5 Cir., 104 F.2d 59, 65. The brief argues that the amount allowed is too great, but we are not convinced this is so, nor do we see that any preference is thereby given the depositing bondholders. The service compensated is that rendered to the plan.

The judgment is affirmed.