**MUTUAL LOAN & SAVINGS CO. OF WEST PALM BEACH, FLA. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12919.

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1950.

---

162

Lucius A. Buck, Jacksonville, Fla., Robert J. Pleus, Orlando, Fla., William H. Cook, West Palm Beach, Fla., for petitioner.

Howard P. Locke, Sp. Asst. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bur. of Int. Rev., and Claude R. Marshall, Sp. Atty., Bur. of Int. Rev., Helen Goodner, Sp. Asst. to Atty. Gen., Virginia H. Adams, Sp. Asst. to Atty. Gen., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The question presented by this petition for review of a determination of the Tax Court is whether transactions, by which the taxpayer, as a party to a petition by two Florida municipal corporations for relief under Chapter IX of the Bankruptcy Act,[1] and pursuant to a plan of composition in such proceeding, surrendered defaulted municipal bonds and detached interest coupons for refunding bonds of the municipalities, constituted the "sale or exchange of property" and the realization of taxable gain within the terms of sections 111, 112(a) of the Internal Revenue Code, 26 U.S.C.A. §§ 111, 112(a), and Treasury Regulation No. 111, § 29.111-1.

The evidences of indebtedness involved are those of the municipalities of the City of Fort Pierce and the City of Vero Beach, both municipal corporations of Florida. As to what we will denominate the Fort Pierce transaction, in December, 1937, the taxpayer purchased a group of Fort Pierce municipal bonds and detached interest coupons, all of which were in default. The bonds bore interest at six percent. We omit any statement of par value and cost for no question of the amount of gain is involved, the issue here being whether the taxpayer realized, under the statute and regulations, any taxable gain in the transaction. Under the City's plan of composition, and as approved by the United States District Court for the Southern District of Florida, upon the surrender of the defaulted bonds and interest coupons, they were redeemable par for par, subject to a two percent exchange fee. Cash and refunding credits and interest accruals were likewise received, but these items are not now involved. The refunding bonds, re-

1. 11 U.S.C.A. § 401 et seq.

ceived by the taxpayer bore a different date of issuance and a different maturity date, but could be called upon any interest payment date prior to maturity. The rate of interest differed from the original bonds, the refunding bonds promising a lesser rate of interest beginning at one and one-half percent per annum, but progressively increasing during specified yearly periods to five percent per annum. The City's plan of composition provided for the creation of a sinking fund to care for the principal and interest payments on the bonds.

As to the Vero Beach transaction: On the same day the taxpayer purchased the Fort Pierce bonds, it acquired a large block of Vero Beach six percent and seven percent municipal bonds and interest coupons detached therefrom, all of which were in default. By its plan the City of Vero Beach proposed to refund its defaulted bonds par for par but the holders of accrued interest coupons were required to waive thirty percent of the face value of such obligations. The payment of a four percent exchange fee was required, and provision made for the creation of a sinking fund to cover principal and interest payments. In accordance with the plan, the taxpayer exchanged the defaulted bonds for refunding bonds, and also deposited with an escrow agent interest coupons for which it received a certificate of deposit representing seventy percent of the face value of the coupons deposited. As a result of the plan of composition, and as approved by the Court, the taxpayer received upon the surrender of its evidences of indebtedness, par for par, City of Vero Beach refunding bonds, plus cash. These bonds, which were subject to call on any interest date prior to maturity, bore interest at a lesser amount than the original bonds, beginning at two percent per annum, but progressively increasing during specified yearly periods to five percent per annum. Thereafter the taxpayer also surrendered other detached coupons, waiving the thirty percent of face value in accordance with the plan of composition, and received refunding bonds, plus cash. Both the Fort Pierce and Vero Beach bonds were declared by their terms

to be "issued in exchange for, and as a continuation, extension, merger, and renewal of valid subsisting bonded indebtedness of said City incurred prior to November 6, 1934." This evidenced recognition of the subjection of all property, including homestead property, within the city limits to the levy of taxes, and indeed by their terms the full faith, credit and tax power of the City were pledged to the payment of the refunding bonds to the same extent and with like force and effect as the same were pledged for the payment of the indebtedness refunded.

In both the Fort Pierce and Vero Beach transactions the fair market value of the defaulted bonds and refunding bonds secured in lieu thereof was identical except for the difference arising from the payment of the respective exchange fees provided by the plans of composition.

The Tax Court, finding the facts in detail, of which the above is a summary of those now material, while not expressly overruling the contention of the taxpayer that since under the laws of Florida the refunding transactions created no new indebtedness, but merely continued the old with changes consisting of deductions in the interest rates, extensions of time for payment, and waiver of portions of the principal of certain detached interest coupons, no exchange occurred, thought the Florida law immaterial in determination of what was an exchange of property "as this term is used in the Federal taxing acts," relying upon the cited case of Burk-Waggoner Oil Assn. v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183, and Berry Bros. Trust, 9 T.C. 71. The Court stated: "The test uniformly applied in determining whether a transaction does constitute an exchange within the purview of section 112, supra, is whether the material conditions of the refunding bonds differed substantially from the conditions of the old securities exchanged therefor," and applying this test, held that the terms of the refunding bonds extending the times of payment, reducing the rate of interest, together with the waiver of a part of the face value of interest coupons were "very material" differences. The Court likewise deemed

that "non-interest bearing-coupons were exchanged for new interest-bearing refunding bonds." Accordingly, the Court upheld the determination of the Commissioner that the receipt of the refunding bonds was an exchange within the terms of the statute.

Here, in support of the Tax Court's determination, the Commissioner contends that the differences found by that Court to exist between the old bonds and the refunding bonds constitute an exchange. The taxpayer here still contends: that in reality the refunding bonds were only a continuation of the original contract obligation of the municipality and did not represent new or different rights or obligations; that this must of necessity be true because this is the unquestioned law of Florida, and indeed the only basis upon which by that law refunding bonds of any validity whatever can be issued except upon a favorable vote of the qualified electorate of the municipality involved. To this the Commissioner replies that the State law is not applicable to the incidence of Federal Taxation under Federal statutes.

 Consideration of this case in all of its aspects, factual and legal, convinces us that the views urged by the petitioning taxpayer are correct, and therefore must be sustained. Consequently we find the determination of the Tax Court erroneous. According full recognition to the well established rule necessary in the protection of uniformity of Federal taxation, that the nature and effect of transactions resulting from the application of State law is not at all controlling in the imposition and collection of Federal taxes, we nevertheless find in the situation here the exception to the rule which obtains when the Federal authority has expressly, or by necessary implication, provided that the applicability of the Federal law may be determined by resort to State law.[2] This exception finds ample room for application in this case. When the foundation for the imposition of

the Federal tax is the "exchange" induced by Federal law, application of the terms of such inducing statute in determining whether the "exchange" is taxable does no violence to the rule by which Federal tax consequences are determined by Federal law.

 On the one hand we have the Federal statute with reference to sales or exchanges; on the other, we have the Federal statute providing for the composition of municipal indebtedness, and in the present case it is this latter statute which furnished the basis for the claimed exchange. The latter statute, an exercise of the bankruptcy power of the Federal Government, expressly imposes upon the Federal Court the duty of determining that "petitioner is authorized by law to take all action necessary to be taken by it to carry out the plan.[3] "The phrase 'authorized by law' manifestly refers to the law of the state." United States v. Bekins, 304 U.S. 27, 49, 58 S.Ct. 811, 814, 82 L.Ed. 1137. Thus the validity of the refunding bonds is to be adjudged by the Federal Court in accordance with the State law, and the confirmation of the plans now in question, as a result of which the refunding bonds were received by the taxpayer, represents a determination that such bonds were authorized by Florida law. However, in order for them to have this validity, they must be given the classification and their terms must be applied, as done by the Florida Courts in many instances, according to the principle that the power to issue refunding bonds without any vote of the electorate is "that power which is limited to a mere authorized extension of the old obligation of contract to the new bonds, when the latter purport to be issued 'exclusively' as refunding bonds to be used for the purpose of refunding the old bonds or the interest thereon." State v. Citrus County, 116 Fla. 676, 157 So. 47, 97 A.L.R. 431. Also that "refund-

2. Heiner v. Mellon, 304 U.S. 271, 279, 58 S.Ct. 926, 82 L.Ed. 1337.

3. 11 U.S.C.A. § 403, sub. e. The amendment of July 1, 1946 further provides that in case of securities the Court

shall not enter final decree "unless the court finds and adjudicates that said securities have been lawfully authorized and, upon delivery, will constitute valid obligations of the petitioner, * * *." 11 U.S.C.A. § 403, sub. f.

ing bonds are in legal effect authorized projections into the future of the original contractual obligations represented by the bonds which are lawfully refunded." State ex rel. Pinellas County v. Sholtz, 115 Fla. 561, 155 So. 736, 738. Also, as stated in Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42, at page 51, 62, "This court in previous cases treating the subject of refunding bonds, their attributes and characteristics, has held that refunding bonds create no new debt, but merely evidence an extension or renewal, in a new form, of the original existing indebtedness, which original indebtedness is not extinguished by, but is merged into, the refunding bonds, with like force and effect as to obligation as if the original bonds had remained unrefunded by the issuance of such refunding bonds." [4]

It is apparent therefore that in any Court's application of the provisions of the Revenue Act to a transaction consummated as a result of the Federal provision for composition of municipal indebtedness, the two statutes must be considered together, and when thus considered in the present case it is clear that there was no such exchange of property as produced a realizable gain, because if the taxpayer received anything, its validity must be governed by the law of Florida, and this was determined in obedience to the Federal statute. To give effect to the municipal composition statute, the obligations received by the taxpayer must be given the effect accorded them by the State law. Thus considered, the refunding bonds received do not, and can not legally, differ "materially either in kind or in extent" from the old bonds held prior to the composition. The transaction is legally equivalent to the transfer of property for property of like kind, and of equal fair market value. Equal market value is found here. We do not hold that a difference in market value, computed at the time, would not represent income. We do hold that the

incidents of changed maturity dates, lessoned interest rates, and provision for a sinking fund, do not under the circumstances here evidence that the refunding bonds were "a thing really different" from the old bonds. We may further observe that if the refunding bonds in question are not valid under Florida law, their value would be so doubtful, as to remove any question of a gain taxable under the Internal Revenue laws.

Under the circumstances here, we do not consider controlling the cases relied upon by the respondent. Emery v. Commissioner, 2 Cir., 166 F.2d 27, 1 A.L.R.2d 409; Girard Trust Co. v. U. S., 3 Cir., 166 F.2d 773. Whatever might be the rule as to voluntary exchanges, we think that under the circumstances here, which we have related, the realities of the situation and the law impel a holding that the transactions here under consideration did not constitute the exchange of property for other property differing materially either in kind or extent.

The decision of the Tax Court is reversed and the cause remanded, with direction that it disallow the Commissioner's determination of deficiency.

Reversed and remanded.

4. State v. Citrus County, supra; City of Fort Myers v. State, 129 Fla. 166, 176 So. 483; Fahs v. Kilgore, 136 Fla. 701, 187 So. 170; Outman v. Cone, 141 Fla. 196, 192 So. 611; Taylor v. Williams, 142 Fla. 402, 195 So. 175; City of Sebring v. Harder Hall, Inc., 150 Fla. 824, 9 So.2d 350; Ashton v. Town of Deerfield Beach, 5 Cir., 155 F.2d 40.